## STATE EX REL. JOHN J. HARTMANN
## v. DR. J. BENJAMIN LUND.*

152 N. W. (2d) 514.

August 11, 1967—No. 40,673.

---

* Certified to U. S. Supreme Court November 28, 1967.

*Douglas M. Head,* Attorney General, and *Gerard W. Snell,* Acting Solicitor General, for appellant.

*Bailey W. Blethen* and *George M. Stephenson,* for respondent.

*Thomas A. Keller III,* for Minnesota Civil Liberties Union, amicus curiae.

NELSON, JUSTICE.

Respondent, the director of the Minnesota Security Hospital, appeals from an order of the District Court of Nicollet County entered November 21, 1966, in a habeas corpus proceeding instituted in behalf of relator, John J. Hartmann, a patient in the hospital. The order appealed from directed that respondent release relator from the hospital 30 days after its issuance unless during that time respondent was "otherwise authorized by new warrant obtained through further procedures under the Statutes in such case made and provided."

In his pro se petition for the writ, relator contends that he is held by respondent under an invalid commitment from the Hennepin County probate court and that he was denied due process in the commitment proceedings, alleging that he was held incommunicado in the Minneapolis city jail from October 23 until November 1, 1951; that on that date he was served at 11 a.m. with notice of a sanity hearing which was to be, and was, held at 2 p.m. that day; that relator was not permitted to contact an attorney within this 3-hour period; that he was denied the right to be present at the sanity hearing; and that the court-appointed doctors, Donald R. Reader and Emil Johnson, did not rule relator to be mentally ill or incapacitated. He contends that the court did not have jurisdiction and that he was denied several constitutional rights.

Respondent in his return alleged that on October 31, 1951, Mary E. Hartmann, wife of relator, filed with the probate court of Hennepin County a petition for commitment in the matter of his mental illness and that an authorization to hold for examination was directed to the Minneapolis city jail, ordering confinement of relator pending outcome of the petition so filed; that on the same day the probate court issued a notice for examination and hearing, which notice was then personally served on relator; that a hearing was held on November 1, 1951, on which date the board of examiners reported to the probate court that relator was of unsound mind; and that the probate court then found relator to be mentally ill and issued a warrant committing him to the custody of the superintendent of the Minnesota Security Hospital.

The district court at the close of the habeas hearing found that in the forenoon of November 1, 1951, relator was examined by a board of

examining physicians; that Frank J. Collins, counsel retained for relator by his wife, was present, as was a member of the Hennepin County Attorney's office; that following the examination and during the afternoon of the same day hearing proceedings were held before the Honorable Frank Bessessen, Hennepin County court commissioner, at which the medical board's conclusions were considered and testimony in support of the petition was heard; that relator was not present and was denied opportunity to be present at those proceedings; and that the procedures followed denied relator due process and the resulting judgment, finding relator mentally ill and dangerous, is therefore insufficient warrant on which to continue his confinement. The court also stated in a memorandum accompanying its order:

"I am impressed that in this procedure, whatever else may be said about it, relator is left with the feeling that he had no counsel representing his interests, was not adequately aware of the adversary nature and true purpose of the examination he does recall, and did not have opportunity to participate in or even to observe the proceedings which led to his commitment. Failing medical or other evidence showing that a right of confrontation would be useless or harmful to the patient, it seems to me its denial in this case denies due process. The record is ambiguous as to whether, speaking for the State's evidence, the Court Commissioner was present during the examination. Relator states he was not. An affidavit of one of the counsel involved on behalf of relator states otherwise. But whether he was or was not, the examination was not a fact finding procedure but preliminary to one. Its purpose is to enable the examining Board to obtain an adequate foundation upon which to express an expert conclusion to the Court. There is no reason why the proceedings could not have been continuous and consolidated, but they were not. Therefore, at the time when the examining board's conclusions were expressed, and meaningful inquiry could have been made into the basis upon which the conclusions reached and expressed were formed, this relator was denied an opportunity to confront those who testified against him. That, in the opinion of this Court, is not due process.

"I have permitted the State a period of 30 days in which to take such

further procedures as it is advised. I want the record to be clear that I express no opinion as to whether or not this relator should now be confined. Associated with this proceeding, other matters have been touched upon which indicate to the Court there is serious question as to whether he should not, indeed, be confined. The reach of my decision here goes only to the procedure by which he was originally confined in Hennepin County."

Photostatic copies from the Hennepin County probate files contradict several of relator's assertions concerning the commitment proceedings. They indicate that the judge of probate entered an order appointing medical examiners and an attorney for relator on November 1, 1951. The petition of Mary E. Hartmann, relator's wife, was filed on October 31, 1951, with the clerk of probate court. The notice of examination and hearing provides:

"You hereby are notified that pursuant to petition filed in this Court for hospitalization and possible commitment to a state hospital and U. S. Veterans Administration as a mentally ill person, examination and hearing will be held on November 1, 1951.

"Please inform the officer serving this Notice whether or not you desire to be represented by counsel at this hearing and whether or not you are financially able to obtain counsel."

This notice was dated October 31, 1951, and served by the sheriff of Hennepin County on that day.

The report of examination states that an examination was held in the city jail at 10 a. m. November 1, 1951, and that the following were present: Relator; Commissioner Bessessen; Assistant County Attorney Bruce C. Stone; relator's attorney, Frank J. Collins; Drs. Donald R. Reader and Emil Johnson, who were the examiners; relator's wife and his father; and two members of the Minneapolis Police Department. The report sets forth the finding of symptoms as follows:

"This patient is a 27 year old separated white male who was initially subject to symptoms of schizophrenia while in military service during 1944. At that time he expressed a wide variety of ideas of reference and

persecution which resulted in a medical discharge and transferred to St. Cloud Veterans Hospital. He was released after several months apparently improved. He was employed at irregular intervals since he would frequently resort to alcoholism or excessive use of barbiturates. He was committed again in 1949 because of explosive episodes of violent behavior at home during which he would threaten the life of his wife and children. He also threatened suicide on several occasions. On one occasion he attempted to secure a gun from a bank where he had previously been employed as a guard. On this occasion he had threatened the life of a bartender who had ejected him. He was released in June, 1949 and committed temporarily again in February, 1951 privately for further observation. At that time he had set fire to his home for no logical reason. He was discharged on March 21, 1951 after an apparent remission in the hospital. It is characteristic for him to appear superficially well although there is a constant undercurrent of tension and explosive fits of temper. In June, 1951 he was again hospitalized and committed by the Court to the Veterans Administration and transferred to the St. Cloud Hospital. On this occasion he had again threatened to kill his family and had been drinking constantly. He was released again in October, 1951 but again resorted to heavy drinking and excessive use of barbiturates. He was arrested for drunkenness and an attempted holdup of a taxicab during which he used a beer can as a gun. He was arrested currently for apparent involvement in the death of a man who was found in his room. He is felt to be definitely dangerously mentally ill and should be confined in the asylum for the dangerously insane. Diagnosis: Schizophrenia—paranoid type."

The report refers to Dr. Reader as relator's family physician, and states that the material witnesses at the examination were relator's wife, his father, and the two members of the police department. The examination report, which was signed by the court commissioner and the medical examiners, contains this recital:

"John J. Hartmann was found to be a mentally ill person, and he was therefore committed to the Asylum for the Dangerously Insane at St. Peter, Minnesota."

The judgment of the probate court, also entered November 1, 1951, recites:

"The above entitled proceeding having been duly commenced by petition and the matter having been referred to the Court Commissioner of Hennepin County, Minnesota, for examination and report, and the above named patient having been personally examined as to mental illness by a Board of Examiners consisting of the Court Commissioner, Donald R. Reader, M. D. and Emil Johnson, M. D., said patient being represented by Attorney Harold J. Anderson duly appointed by this Court, and the report of said Board of Examiners having been duly filed herein, whereby said patient was found to be mentally ill and in need of care and treatment in a hospital for the mentally ill,

"Now, THEREFORE, Upon reading and filing said report, and upon all the records and proceedings herein, IT HEREBY IS ADJUDGED AND DETERMINED, and the Court HEREBY DOES ADJUDGE AND DETERMINE, That the said John J. Hartmann is mentally ill and a proper person for care and treatment in a hospital for the mentally ill

"WHEREFORE, IT HEREBY IS ORDERED AND ADJUDGED, That the said John J. Hartmann be committed to the custody of the Superintendent of the Asylum for the Dangerously Insane at St. Peter, Minnesota * * *."

Early in the morning of October 23, 1951, relator, according to the records, had been arrested and charged with being drunk after he attempted to hold up a cab driver by using a beer can as a pistol. He was later that day held for investigation of murder when police connected him with their investigation of a homicide which had occurred the same night. Relator's wife, in an affidavit filed with the district court, stated that she learned of her husband's arrest when it was broadcast by a radio news commentator and immediately retained Frank J. Collins, an experienced criminal defense attorney, for her husband; that she discussed the matter of Collins' retainer with her husband, and he concurred in it; that, of her own knowledge, Collins had numerous conversations between October 23 and October 31, 1951, with relator and with her; that it was mutually agreed that it was important to determine

relator's mental capacity prior to the institution of any criminal proceedings; and that she agreed to and did petition the probate court to determine whether her husband was mentally ill. She stated also that she was present as a material witness and that Mr. Collins was present as relator's counsel at the sanity hearing.

Respondent also filed an affidavit by Mr. Collins which stated that on October 23, 1951, he was contacted by relator's wife and requested to represent him in connection with the alleged homicide. Mr. Collins undertook the representation and had frequent conferences with relator, who apparently accepted and confirmed his services as attorney. Collins attempted to ascertain the facts and surrounding circumstances of the crime it was suspected that relator had committed and, because relator was unable to satisfactorily explain the circumstances resulting in the death of the victim, Collins became extremely concerned as to relator's competence to stand trial. Upon information and belief Collins stated that on or about November 1, 1951, a hearing was conducted in the matron's quarters of the jail. Affiant Collins personally recalled having attended an interview there wherein relator was interviewed and questioned by two physicians, one of whom was Dr. Emil Johnson. Collins recalled that the interview referred to was somewhat extensive. He stated that he approved the conference between relator and the physicians and believed it to be in relator's best interests that he be so examined. Mr. Collins recalled advising relator as to the nature and possible consequences of the proceeding; that, if he were to be adjudged mentally ill, upon a cure he could still be tried on the charge against him; and that at such time the state's evidence against him, although circumstantial, might not be as conclusive as it then was.

Attorney Harold J. Anderson stated in an affidavit that to the best of his recollection—

"* * * on or about November 1, 1951 a hearing was conducted in the Matron's Quarters of the Hennepin County Jail, wherein John Jacob Hartmann was interviewed and questioned by the two physicians, one of whom was Dr. Emil Johnson and Dr. Donald R. Reader. Other persons present at the hearing included the Court Commissioner, Frank

Collins, the attorney representing the Petitioner, and myself as the court appointed attorney. At the onset of the interview, the Petitioner was questioned as to whether he understood the purpose of the hearing and he responded that he did. To the best of my recollection he was also advised of his legal rights and his right to be present at the hearing to be held that day in the office of the Court Commissioner. To the best of my recollection the Petitioner was advised by his attorney as to the nature and consequences of the proceeding and of his being adjudged mentally ill and that if he were to be adjudged mentally ill that upon his cure of such illness and restoration he could still be tried under the charge against him."

Dr. Reader, relator's family physician, is now deceased. An affidavit, however, was made by Dr. Emil Johnson, the other examining physician, in which he states in part:

"That affiant has no clear recollection of John J. Hartmann as an individual except as he may be the person described in the foregoing paragraph who was examined in the Minneapolis City Jail."

The doctor also stated:

"That affiant recalls only one (1) occasion in which the examination of the subject of the commitment hearing in the Hennepin County Probate Court was conducted in the Minneapolis City Jail.

"That on the occasion in the paragraph referred to above there existed at that time no medical or psychiatric reason why the person who was the subject of the commitment hearing should not have appeared at the subsequent hearing in the courthouse on the alleged mental illness hearing."

Relator did not appeal from the judgment entered by the probate court. In 1962, 11 years later, a petition for his restoration to capacity was filed in his behalf by George Roehrdanz of Minneapolis. The probate court duly issued an order for hearing on said petition and service of the order was made on all interested parties on March 16, 1962. On April 24, 1962, a hearing was held before the Honorable John T. McDonough, judge of probate for Washington County, who was

acting pursuant to law as a substitute judge for the probate court of Hennepin County. Medical examiners were duly appointed by the court and following a full hearing at which petitioner was fully represented by counsel of his own choice, Mr. Roehrdanz, the petition for restoration to capacity was denied. Slightly more than a year elapsed before a new petition for restoration to capacity was again filed by Mr. Roehrdanz May 8, 1963. The court duly appointed medical examiners and ordered a hearing for July 9, 1963. This hearing was continued on various dates between July 9 and November 6, 1963. Relator was present with his counsel during these sessions, at which witnesses were examined and cross-examined by his counsel and by Si Weisman, attorney for relator's wife, and by Harlan Goulett, assistant Hennepin County Attorney, who opposed the petition. On November 6, 1963, the court ordered an independent neuropsychiatric examination of relator to be conducted by the Psychiatry Unit, University of Minnesota Hospitals. On December 13, 1963, the Department of Psychiatry in a report and letter to the court diagnosed relator's condition as "schizophrenic reaction, paranoid type." The summary submitted by the hospital stated that relator's prognosis was "poor." Based upon the report and the letter of recommendation, the court made its findings and order on January 29, 1964, denying relator's petition for restoration to capacity. No appeal was taken from the probate orders denying relator restoration to capacity.

Two days after the order denying the second petition for restoration to capacity was entered, relator filed a petition pro se for a writ of habeas corpus in the District Court of Nicollet County. The Honorable L. J. Irvine, the judge to whom the matter was referred, made an independent investigation of the facts, and on April 3, 1964, issued his order denying the writ.

On February 19, 1965, relator, again acting pro se, filed his petition for a writ of habeas corpus in the United States District Court. (D. Minn. No. 3-65-57 Civil.) On February 25, 1965, a memorandum and order dismissing the petition on its merits was entered by the Honorable Earl R. Larson, Judge of the United States District Court. On April 22, 1965, relator again petitioned the United States District Court for a writ of habeas corpus "ad testificandum." (D. Minn. No. 3-65-127 Civil.) This

petition was also dismissed on its merits in an order and memorandum filed by Judge Larson May 12, 1965. Judge Larson further held that relator's proper remedy was by petition for restoration to capacity under applicable Minnesota law, citing State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 224, 128 N. W. (2d) 710, 718 (1964). Following the entry of Judge Larson's second order denying habeas corpus on the merits, relator on August 5, 1966, petitioned for a writ of habeas corpus in the District Court of Nicollet County in the proceeding which is now before this court for review.

Respondent contends that the District Court of Nicollet County erred in finding that petitioner was denied due process in the Hennepin County commitment proceedings and suggests that the district court may have erred in not finding the issues raised in the present situation to be res judicata by virtue of the denial of the three previous habeas corpus petitions and the two petitions for restoration to capacity.

■ The statements of Dr. Johnson in his affidavit indicate a confused recollection and an uncertainty as to the true facts, since the record does not indicate any subsequent hearing in the courthouse on relator's alleged mental illness. The report of the examination conducted before Commissioner Bessessen clearly states that relator was found to be a mentally ill person and was therefore committed to the asylum for the dangerously insane at St. Peter. It is clear that relator was present in person and was represented by counsel at this examination. In effect, the 10 o'clock hearing at the Minneapolis city jail of which the report is a record was the hearing at which it was decided that relator was mentally ill.

During all the times mentioned herein, Minn. St. 525.763 was in effect. It provides:

"The court commissioner may act upon a petition for the commitment of a patient when the probate judge is unable to do so."

The provisions of this section were incorporated into the probate code of 1935 without material change.[1]

---

[1] Where a probate judge is unable to act, a patient can be committed as insane by court commissioner. Opinion Attorney General, No. 128-B, August

It is clear from the recital in the judgment that the proceeding had been duly commenced by petition and the matter referred to the court commissioner of Hennepin County for examination and report; that relator was personally examined as to mental illness by the board of examiners, consisting of the court commissioner and the appointed doctors, the patient's court-appointed counsel being present and representing the patient; and that the board of examiners determined that relator was mentally ill and in need of treatment. It is clear also that the court upon reading and filing said report adjudged and determined that relator was mentally ill and the proper person for care and treatment in a hospital for the mentally ill, and ordered his commitment.

This makes it plain that there was only one hearing for the purpose of determining the mental illness of relator on November 1, 1951, which commenced at 10 a. m. in the forenoon of that day with relator present and represented by counsel throughout the entire proceeding. The court commissioner who presided at the hearing was legally substituted for the judge of the probate court and in that capacity joined in the determination that relator was mentally ill and that he be committed to the security hospital. The entry of the judgment by the judge of the probate court was but a routine matter of putting into effect the findings and determinations of the duly constituted board. There is no indication of any denial to relator of the right to be present at the hearing which determined his mental illness and commitment. There was no further hearing and none was required under the circumstances. The statutes, the record, and the files herein bear this out. It might also be added at this point that the proceedings and the testimony taken at the habeas corpus trial come to us in the form of a transcript without a settled case.

■ A careful consideration of the testimony set forth in the transcript and a thorough examination of the files relating to the original commitment and the proceedings which followed disclose a failure to recognize

20, 1946. When the court commissioner acting in lieu of the judge of probate court commits a patient to hospital, the warrant should bear the seal of the probate court. Opinion Attorney General, No. 346-F, May 14, 1931. The report of examination and the judgment and warrant issued in the matter of relator's commitment came within these requirements.

that controverted questions of fact in habeas corpus proceedings must be proved the same as in other legal proceedings. Where, as here, the return and the original commitment proceedings set forth process showing good cause for relator's detention and show compliance with the statutory requirements on the part of the probate court, it is incumbent upon relator to prove the facts which he asserts invalidate the apparent effect of such process. Clearly, where competent evidence was neither offered nor introduced to prove facts asserted in the habeas corpus proceedings as grounds for an attack upon the judgment and warrant of commitment under which relator was committed, no legal questions are in fact raised with respect to such grounds of attack.

■ It is clear from the record that relator's claims are confused and inconsistent with the record of the hearing as it was made before the examining board. It is also clear that the habeas corpus proceeding involves a collateral attack on the judgment and warrant of commitment. The probate court is a court of record with jurisdiction in probate matters, estates of deceased persons, and persons under guardianship, so the rules applicable to collateral attack on a judgment apply to relator's attack on the judgment and warrant of commitment.

Ordinarily, the only questions open to review on habeas corpus after entry of judgment are whether the court had jurisdiction of the subject matter and the person; whether the judgment was authorized by law; and whether the relator was denied fundamental, constitutional rights. The writ may not be used as a substitute for an appeal or a motion to correct, amend, or vacate. Where, as here, the judgment is one imposed by a court of record having jurisdiction over the subject matter and the person of relator, the writ reaches only those defects which appear on the face of the proceedings. No defects appear on the face of the proceedings in the instant case. Extrinsic evidence is not admissible to establish want of jurisdiction. Willoughby v. Utecht, 223 Minn. 572, 27 N. W. (2d) 779, 171 A. L. R. 535.

As to the nature of commitment proceedings, this court in In re Restoration to Capacity of Masters, 216 Minn. 553, 556, 13 N. W. (2d) 487, 489, 158 A. L. R. 1210, had this to say:

"Notice in commitment proceedings is not always practicable where the person sought to be committed is violently and dangerously insane. But those types of insanity or feeble-mindedness which manifest themselves in harmless symptoms lend themselves to the orderly processes of a formal hearing and adjudication; and in such cases the constitutional mandates must be strictly observed by giving the person under inquiry not only adequate notice of the fact of a hearing and the purpose thereof, but also every opportunity to be heard before the order of commitment is issued. 28 Am. Jur., Insane and Other Incompetent Persons, § 32."

There is nothing in the record of the original proceedings of commitment in the instant case which fails to meet the suggestion of this court in the Masters case. No appeal was taken to challenge the original hearing in the Hennepin County probate court with respect to sufficiency of notice or otherwise, and the record affirmatively shows that relator was present with personal and appointed counsel at the hearing which resulted in his commitment. We cannot here, under the circumstances, speculate upon whether or not relator at that time consented to the jurisdiction of the probate court. There is clearly no indication of lack of notice, lack of presence, or lack of representation by counsel.

With reference to constitutional requirements of due process in commitment proceedings, this court said in State ex rel. Blaisdell v. Billings, 55 Minn. 467, 468, 57 N. W. 206, 794:

" 'Due process of law' requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights."

In State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 128 N. W. (2d) 710, we said that a person with respect to whom a petition for commitment is filed is entitled to reasonable notice and an opportunity to be heard, to the extent circumstances permit, which may include the right to counsel; the right to cross-examine all witnesses for the state; and the right to present evidence in opposition to the petition. In the instant case there is no showing whatsoever of prejudice resulting from a lack of timeliness of the notice. Relator was heard in an extensive interview. He was represented not only by appointed counsel, but also

by retained counsel, and he had, through such counsel, the right of cross-examination. It would appear, therefore, that relator was afforded due process unless we characterize his counsel incompetent or inadequate, which we are not disposed to do on the record herein. Counsel of his own choice was hired with the assistance of his wife, and there is nothing in the record to indicate that he did not fully consult with him. It must be presumed that both the personally chosen and court-appointed counsel advised relator of his rights and the consequences that would follow if he should be committed as mentally ill. It is the rule that where a defendant selects and retains counsel, the state is relieved of the obligation of seeing that the defendant has the effective assistance of counsel.

It is to be noted that relator twice brought petitions for restoration to capacity. In such positions he never attacked the legality of his original commitment.

■ Relator's unsupported statements in the present proceeding are not sufficient to overcome the presumption of the regularity of the original proceedings in the probate court. State ex rel. May v. Swenson, 242 Minn. 570, 65 N. W. (2d) 657. It would appear that it will not solve any problem in cases like this one to permit large-scale use of the extraordinary writ of habeas corpus for review purposes. As was said in the May case with reference to its use to review criminal proceedings (242 Minn. 575, 65 N. W. [2d] 661): "Instead, it would cause confusion worse confounded." This is true especially where, as here, it is obvious from the record of the original proceedings in probate court that relator has not been denied due process of law and was on the face of the record validly committed.

■ It was determined in In re Wretlind, 225 Minn. 554, 32 N. W. (2d) 161, that the original order of commitment can be attacked in proceedings for restoration instituted under Minn. St. 525.78, which provides in part:

"Subdivision 1. Any reputable person or the commissioner may petition the court of commitment * * * *for the restoration to capacity of a patient * * *.*

"Subd. 2. Upon the filing of a petition * * * the court shall fix the time and place for the hearing thereof, ten days notice of which shall be given to the commissioner and to the county attorney and to such other persons and in such manner as the court directs. Any person may oppose such restoration. Upon proof that the patient is not mentally ill, senile, inebriate, mentally deficient, or epileptic the court shall order him restored to capacity at the expiration of 30 days from the date of such order." (Italics supplied.)

The petitioners in the Wretlind case asserted that the probate court had no jurisdiction to order the commitment for several specified reasons. The state denied the right of petitioners to contest the jurisdiction of the probate court, contending that the proceeding, being one for restoration to capacity, assumed the validity of the original order and could not be used to make a collateral attack on the original jurisdiction of the court. We rejected these arguments, holding that the proceeding was a direct attack on the probate court's jurisdiction and properly brought the question before the court. In effect, we held that a petition for restoration is an effectual device for attacking an order of commitment.

Relator has had two opportunities in the earlier petitions for restoration to attack the order of the commitment but has not done so in either instance. As we see it, upon this record the proper way to make an attack on the original order of commitment is by raising the issue in a petition for restoration. As was indicated in State ex rel. Anderson v. U. S. Veterans Hospital, *supra,* such a challenge should be made through application by relator or someone acting in his behalf to the probate court of Hennepin County to appoint a guardian ad litem for relator who would, upon appointment, file a petition for restoration to capacity upon such grounds as may appear justified at the time. If such petition should be filed, the probate court must direct that a hearing be held on a day certain and provide that all interested parties be notified. Timely inquiry should be made as to whether relator will be represented by an attorney of his own selection at the hearing, and, if not, provision should be made for such representation pursuant to the applicable statute. At

the hearing, the petitioner should be afforded full opportunity to present evidence and to cross-examine any witnesses whose testimony is taken to support the commitment. It is, of course, assumed that at such hearing there would be a full development of the facts relating to whether the procedures of the probate court at the time of the initial hearing were consistent with the minimal requirements of due process in a proceeding not ordinarily considered an adversary proceeding. In re Restoration to Capacity of Masters, *supra.*

This court in the Masters case said (216 Minn. 560, 13 N. W. [2d] 491):

"We have no desire to change the rule that proceedings of this nature are not adversary in nature, that they are conducted by the state in its character of *parens patriae,* and that 'the manner and method of determining the facts, when jurisdiction has once vested in the court as required by law, rests in its sound judgment and discretion, controlled of course by the general rules of judicial procedure.' "

We recommend a reading of State ex rel. Anderson v. U. S. Veterans Hospital, *supra,* and an examination of the citations therein for the present approach of this court to the troublesome questions involved in a review of proceedings like those presently before us. Upon the state of this record we must reverse for the reasons that relator has wholly failed to establish that the order of commitment was invalid, either because of lack of jurisdiction in the probate court of Hennepin County, or because the statute, pursuant to which the probate court acted, is unconstitutional, or because of failure of the probate court to conform its procedures in this case to the minimal constitutional requirements of due process.

The order of the district court below is in all things reversed. We have made it clear that the proper procedure for relator at the present time is to petition for restoration in the manner set forth herein.

Reversed and remanded with directions in accordance with this opinion.