ROY A. SIMBERG v. STATE.

179 N. W. (2d) 141.

August 7, 1970—No. 41850.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and James F. Murphy, JJ.

PETERSON, JUSTICE.

This is an appeal from an order denying a petition for post-conviction relief.

At about 4:10 a. m. on October 29, 1966, two men robbed the Paul Bunyan Motel in Roseville. There were two other persons in the motel office at that time, Donald C. Tempel, the night clerk, and John Burns, a shuttlebus driver. They testified that the robbers, whom they later identified as Charles Vorderbruggen and the petitioner, entered the motel at 4 a. m., asked the price of a room, and then left. Burns walked out at the same time to pick up a truckdriver who had called the motel. About 10 minutes later the two men returned; this time Vorderbruggen held what appeared to be a gun (later determined to have been a toy). Tempel obeyed orders to empty the cash register (which held $125 in several large bills and 50 one-dollar bills) and then to lie on the floor. Tempel also gave them $2 out of his pocket.

The lighting was good in and around the office, and during both encounters Tempel had ample opportunity to observe the men.

As the robbers were fleeing the motel, Burns and his passenger, Robert Williams, were arriving. Burns had been suspicious of the two men, partly because they had parked their car, a blue Corvair, in a strange place for two people actually intending to spend the night. When Burns and Williams found Tempel on the floor and heard what had happened, they awakened the resident manager, who promptly called the Roseville police.

The Roseville Police Department radioed a report of the robbery to the St. Paul Police Department. Sergeant Francis G. Whitney received this call at about 5:05 a. m. and promptly proceded to 914 York in St. Paul, the home of Charles Vorderbruggen. Vorderbruggen was a prime suspect in several recent robberies and owned a dark-blue Corvair with the license number 4ET 295. Not finding the car there, Whitney drove to 1454 Payne Avenue, where petitioner lived. Petitioner had previously been convicted of robbery, was then on parole from one of his offenses, and was known to "hang around" with Vorderbruggen.

Whitney did not find the car there either, so he requested assistance in order to cover both houses. Almost immediately, at 5:35 a. m., the officers assigned to this duty advised Whitney that the suspect Corvair was parked in front of 914 York.

Whitney quickly drove to the motel, where he showed pictures of five individuals to all who were in a position to make identifications. Tempel identified Vorderbruggen; Burns and Williams identified petitioner. At 7:55 a. m. Whitney, in the company of other police officers, arrested Vorderbruggen in his home. An hour later petitioner was arrested in his bed. At that time a wallet containing a total of $66, including 31 one-dollar bills, was taken from his trousers, which were draped over a chair 6 feet from his bed.

Later that morning a lineup was held, consisting of Vorderbruggen, petitioner, and a young man with bushy black hair. (Vorderbruggen is tall; petitioner is short, with a high forehead and light hair.) Tempel, Williams, and Burns repeated their identifications, as they did again at the trial. Williams and Burns also pointed out the blue Corvair (which was registered in the name of Vorderbruggen's wife) as the one they saw parked outside the motel.

Petitioner was found guilty of simple robbery, Minn. St. 609.24, and was sentenced to a term of imprisonment not to exceed 10 years, to run concurrently with existing sentences.

In his petition for postconviction relief petitioner alleged: (1) His arrest was unlawful because made without probable cause and without a valid warrant, so that the search of his home was unlawful; (2) the lineup was prejudicial and was begun without his having been informed of his right to the presence of counsel; (3) he was denied due process when he was detained for 3 days without being brought before a magistrate and charged with an offense; (4) he should be released because Charles Vorderbruggen has now made an affidavit stating that petitioner was not Vorderbruggen's accomplice; and (5) petitioner was denied

the effective assistance of counsel. He has raised the same issues on appeal.

■ *Probable Cause for Arrest.* The state concedes that the complaint, which was hurriedly prepared prior to petitioner's arrest, was invalid because it was signed only by the clerk of court. Minn. St. 629.42; State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382. But an arrest can be sustained if, despite this defect, there was probable cause for the arrest. Minn. St. 629.34; State ex rel. Law v. District Court, 276 Minn. 324, 150 N. W. (2d) 18; State v. Beltowski, 281 Minn. 28, 160 N. W. (2d) 705, certiorari denied, 393 U. S. 988, 89 S. Ct. 468, 21 L. ed. (2d) 450. We concur in the postconviction court's finding of probable cause. Eyewitnesses had identified petitioner, who was a known robber and who associated with another man often involved with the law, whose car was seen outside the motel immediately before and after the crime. Certainly there was "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused is guilty." State v. Bean, 280 Minn. 35, 40, 157 N. W. (2d) 736, 740, certiorari denied, 393 U. S. 1003, 89 S. Ct. 493, 21 L. ed. (2d) 468. See, also, State v. Harrison, 279 Minn. 310, 156 N. W. (2d) 763; State v. Purdy, 278 Minn. 133, 153 N. W. (2d) 254.

The search of the petitioner's pants draped over a chair 6 feet from his bed was, therefore, legally unobjectionable because incident to a valid arrest and carried out within the area under the accused's immediate control—the area from within which he could have obtained a weapon or destructible evidence. State v. Mitchell, 285 Minn. 153, 160, 172 N. W. (2d) 66, 70; Chimel v. California, 395 U. S. 752, 762, 89 S. Ct. 2034, 2040, 23 L. ed. (2d) 685, 694.

■ *The Lineup.* Most criminal convictions in contested cases are based upon eyewitness identification. The preservation of the integrity of these identifications is therefore important. The

United States Supreme Court in United States v. Wade, 388 U. S. 218, 229, 87 S. Ct. 1926, 1933, 18 L. ed. (2d) 1149, 1158, quoted Wall, *Eyewitness Identification in Criminal Cases*, p. 26—

"* * * [t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined."

The pretrial procedures in which the accused is confronted by the witnesses for the state thus should be conducted in such a way that the actual courtroom identification is not tainted by unwarranted encouragement from the police. A witness, having seen pictures of former convicts of whom the accused is one and having seen the accused in a lineup, may, by the time of the trial, unconsciously find the defendant familiar to him and make an unhesitating identification, whereas he may not have done so had he seen the accused without having had such prior observations. Moreover, as the Supreme Court noted in Wade, citing Williams and Hammelmann, *Identification Parades,* Part I (1963) Crim. L. Rev. 479, 482, "[I]t is a matter of common experience that, once a witness has picked out the accused at the lineup, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." 388 U. S. 229, 87 S. Ct. 1933, 18 L. ed. (2d) 1159. The use of mug shots and lineups is necessary to police investigations, but they should not be used to suggest guilt. We repeat what we said in State v. Burch, 284 Minn. 300, 315, 170 N. W. (2d) 543, 553: The police should increase the number of people appearing in lineups and attempt to find people who bear reasonable physical similarity to the one alleged to have committed the crime.

We need not examine the law on the substantive insufficiencies necessarily present in a lineup before it will be declared invalid, for the issue was not raised at trial. Counsel for petitioner chose

to forego objection to introduction of evidence of the lineup identification and, rather, attempted to weaken the witnesses' identifications by cross-examination. It was not error, therefore, to admit this evidence. State v. Kohuth, 287 Minn. 520, 176 N. W. (2d) 872; State v. Armstrong, 257 Minn. 295, 101 N. W. (2d) 398. Furthermore, the objection can be deemed waived because the petitioner, having been informed before trial that this evidence would be used and that he had a right to challenge it in a Rasmussen hearing, failed to avail himself of the opportunity. State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3.

Petitioner's claim that he was unconstitutionally denied the presence of counsel at the lineup is without merit. The lineup occurred before the United States Supreme Court announced in United States v. Wade, *supra,* and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. (2d) 1178, that counsel must be offered and, if requested, provided, at a lineup. That rule is not retroactive. Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. (2d) 1199.

■ *Delay before Arraignment.* The petitioner contends that a 3-day delay between arrest and arraignment constitutes a deprivation of due process of law. He cites two cases: State v. Madison, 281 Minn. 170, 160 N. W. (2d) 680, certiorari denied, 393 U. S. 1102, 89 S. Ct. 904, 21 L. ed. (2d) 796, and State v. Carmichael, 275 Minn. 148, 145 N. W. (2d) 554. The latter case is irrelevant because it is so factually dissimilar from this one. The former decision supports the postconviction court's conclusion that the delay was not unreasonable.

There is in the record an explanation for the delay. The petitioner and the prosecution soon after arrest made an agreement that petitioner would undergo a polygraph test and the state would hinge any charges on the outcome. For reasons not attributable to the state, the test was not taken until over 2 months

had elapsed, but in negotiating concerning the disposition of the matter by polygraph test, petitioner induced, or at least acquiesced in, the resulting delay.

Whatever the explanation, the delay was not plainly a denial of due process. The 3-day span included a weekend. In Madison, where we upheld the court's assertion of jurisdiction after a 3½-day delay, we noted that the presence of an intervening weekend is a factor in determining the reasonableness of the time span. Of course, our holding that the duration of the delay was not in these circumstances constitutionally vulnerable should not encourage such delays as a matter of practice. State v. Housker, 273 Minn. 42, 139 N. W. (2d) 474.

■ *Vorderbruggen's Affidavit.* Before the petitioner's trial Vorderbruggen was interviewed in person by petitioner's counsel, with a view toward using his testimony to assist petitioner. However, Vorderbruggen's responses to certain crucial questions were so compromising that use of his testimony in petitioner's defense would have been disastrous. The post-trial affidavit of the convicted Vorderbruggen to the effect that petitioner was not an accomplice in the robbery quite probably represents the result of several conversations between Vorderbruggen and petitioner at the penitentiary and should compel no more consideration than it received.

■ *Ineffective Assistance of Counsel.* There is no merit in petitioner's claim that his privately retained counsel so inadequately represented him that he was denied due process of law. See, Gallagher v. State, 286 Minn. 335, 176 N. W. (2d) 618; State ex rel. Rankin v. Tahash, 276 Minn. 97, 149 N. W. (2d) 12; State ex rel. Hartmann v. Lund, 277 Minn. 398, 152 N. W. (2d) 514, certiorari denied, 390 U. S. 967, 88 S. Ct. 1078, 19 L. ed. (2d) 1171; State ex rel. Black v. Tahash, 280 Minn. 155, 158 N. W. (2d) 504.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.