RONALD KEISER v. DR. CHARLES SHEPPARD, MEDICAL DIRECTOR, MINNESOTA SECURITY HOSPITAL.

194 N. W. 2d 286.

January 28, 1972—Nos. 42893, 42904.

*Warren Spannaus,* Attorney General, *Keith M. Brownell,* St. Louis County Attorney, and *David Naughtin,* Assistant County Attorney, for appellant.

*James Malecki* and *Gislason, Alsop, Dosland & Hunter,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

OTIS, JUSTICE.

This matter is before the court on an alternative writ of prohibition consolidated with an appeal by the state from an order, entered in habeas corpus proceedings, which directs relator's release from a state hospital where he is confined under the so-called psychopathic personality law. The only issue is whether the applicable statute required the probate judge to concur in the findings of the examining doctors that relator was a psychopathic personality. Although the probate judge was of the opinion the relator did not require confinement, he felt bound by the decision of the examining doctors and ordered commitment, noting, however, his dissent. In habeas corpus proceedings the district court issued an order for relator's release, being of the opinion that without the probate judge's acquiescence the commitment order was invalid. Subsequently, we issued an alternative writ of prohibition enjoining the district court from giving effect to its order until the issues thus presented could be resolved by this court. We hold that the probate court lacked jurisdiction to order relator's commitment without a finding by the court that relator was a psychopathic personality within the meaning of Minn. St. 1965, § 526.10.

These proceedings stem from a charge of murder in the first degree against relator arising out of the death of one Joanne Anderson on April 23, 1965.[1] That charge was ultimately dismissed. Thereafter, proceedings were begun under §§ 526.09 to 526.11, relating to psychopathic personalities. The probate judge of St. Louis County appointed two doctors to assist in the examination of relator, resulting in findings dated July 21, 1966, in the following language:

"From the examination so made by us and upon due consideration of all the evidence received, we find and determine that the above named patient is a psychopathic personality and the court finds that commitment to an institution for the care of the mentally ill—senile—inebriate and psychopathic personality persons is necessary for the welfare and protection of the patient and society.

"Dated at Duluth, Minnesota this 21st day of July 1966.

> "J. E. HAAVIK, M.D.
> G. M. COWAN, M.D.
> GEORGE CRAGO—Dissents
> Judge of Probate"

In July 1970, relator petitioned the district court for a writ of habeas corpus. That court held that the commitment was voidable because the probate judge did not concur in the findings. Relator was ordered released from confinement. A writ of prohibition followed.

■ The pertinent sections of the applicable statute, Minn. St. 1965, § 526.10, are as follows:[2]

"Except as otherwise provided, all laws now in force or here-

---

[1] State v. Keiser, 274 Minn. 265, 143 N. W. 2d 75 (1966).

[2] Section 526.10 has now been amended by L. 1969, c. 431, which by reference adopts Minn. St. 253A.07, subd. 13, which states in part: "* * * The court shall not be bound by the evidence presented by the examiners but shall make its determination upon the entire record."

after enacted relating to insane persons, to persons alleged to be insane, and to persons found to be insane, shall apply with like force and effect to persons having a psychopathic personality, to persons alleged to have such personality, and to persons found to have such personality, respectively. * * * The court shall appoint two duly licensed doctors of medicine to assist in the examination of the 'patient.' The proceedings had shall be reduced to writing and shall become part of the records of the court. From a finding made by such court of the existence of psychopathic personality, the 'patient' may appeal to the district court upon compliance with the provisions of sections 525.712, 525.713, 525.72 and 525.73."

The state argues that § 526.10 adopted by reference Minn. St. 1965, §§ 525.752 and 525.753 (subsequently repealed). These statutes directed that the doctors and the judge report their findings, and if the patient was found to be mentally ill the court was authorized to order commitment. We do not construe these superseded statutes to delegate to examining doctors a strictly judicial function. Section 526.10 expressly required "a finding made by such court of the existence of psychopathic personality." We think it clear that the legislature intended the probate judge to have the exclusive authority to determine whether the patient was a psychopathic personality and that the examining doctors functioned only as expert witnesses rather than as coequal members of a judicial tribunal.

■ A more troublesome question is raised by the state's argument that relator must seek relief by a petition for restoration and not by a habeas corpus proceeding. The state cites State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 225, 128 N. W. 2d 710, 719 (1964); and State ex rel. Hartmann v. Lund, 277 Minn. 398, 413, 152 N. W. 2d 514, 524 (1967), certiorari denied, 390 U. S. 967, 88 S. Ct. 1078, 19 L. ed. 2d 1171 (1968). In Anderson, we held that a person committed because of mental illness could test the legality of his confinement by habeas corpus if a jurisdictional question is raised. Dictum in the Hartmann

case suggests that the jurisdictional question must be raised by a petition for restoration. The actual holding was that the habeas corpus petition had not been proved. Unlike Hartmann, as we now hold, the probate court in the instant case was without jurisdiction to order relator's commitment since the court made no finding that relator was a psychopathic personality. The court's jurisdiction was properly challenged in the habeas corpus proceeding. To the extent that language in the Hartmann case is inconsistent with this opinion, it is overruled.

■ Relator here raises for the first time an issue of confrontation. Twelve witnesses were permitted to testify against him without his being present. This is a matter which should have been presented to the trial court. Our failure to pass on the question is, therefore, not in any way to be construed as approval of the practice complained of.

The order requiring that relator be released is affirmed, and the alternative writ of prohibition is discharged.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.