STATE of Minnesota, Respondent,

v.

Jerry Steven BLEGEN, Appellant.

No. C6–85–1737.

Court of Appeals of Minnesota.

May 20, 1986.

Review Denied July 31, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., John E. DeSanto, Asst. Co. Atty., Duluth, for respondent.

C. Paul Jones, Public Defender, Anne (Lewis) McDiarmid, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and PARKER and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

V.B. was sexually assaulted on December 27, 1984. A few hours after the crime was committed, appellant turned himself in to the St. Louis County Jail to serve time on two unrelated misdemeanor offenses. A complaint was filed on February 5, 1985, charging him with two counts of first degree criminal sexual conduct in violation of Minn.Stat. §§ 609.342, subd. 1(c) and 609.-342, subd. 1(e)(i) (Supp.1985). After an omnibus hearing, the trial court ruled that a photo lineup was not overly suggestive. After a jury trial, appellant was found guilty of both charges on April 25, 1985. He was sentenced on both charges on June 17, 1985, for a single term of 100 months, a nearly double durational departure from the Minnesota Sentencing Guidelines presumptive sentence of 54 months. Appellant was given credit for time served from April 5, 1985, when he was released after spending 120 days on the prior charges. Blegen appeals from the omnibus order, the judgment of conviction, and the duration of his sentence. We affirm as modified.

## FACTS

On the evening of December 26, 1984, at about 10:30 p.m. V.B., a 37-year-old woman, walked to the nearby Pioneer Bar in Duluth from her home. She talked with two men who were friends of each other. One had dark curly hair and the other was blond and stocky. Other than those two, she talked to no one else at the bar. She did not recall seeing appellant nor did she recall that he sat next to her. The Pioneer Bar closed at 1:30 a.m.

Just before closing, V.B. left the bar and walked toward her house. As she rounded a bend, a man grabbed her from the back. He dragged her by her hands across the street on her stomach down an embankment into a wooded area.

The assailant repeated numerous times that he was going to kill her. The man threatened to strangle her with a wire, although she did not see a wire. He choked her and beat her. He took her hair with both fists and banged her head many times into a tree. She was bit and beaten on her face, cheeks, hands, arms and legs. He pummeled her face repeatedly with his fists.

After he beat her, the assailant forced her to submit to multiple and different acts of sexual abuse. He threatened other acts of sexual abuse but did not carry out the threats. Afterwards the man told her to turn him in saying "They have me anyway."

The victim described her assailant to police as a white male, in his early twenties, about 5'6", slender, blond hair, 2 inches below his neckline, with no facial hair. She stated he was wearing blue jeans, a woolen shirt (red with black or blue), and a black leather or vinyl jacket which appeared new.

V.B. said the attacker told her he had "lived here all his life" and that he was going to turn himself into the police. Later in the morning the police discovered that appellant had been admitted to the St. Louis County Jail in the early morning hours.

The doctor who examined V.B. testified that she sustained bruises and contusions on the right side of her face and her lower lip. He also saw "strange" marks which V.B. identified as bite marks. She had a fracture of the eye socket and another fracture lower down in the cheek area, consistent with being hit or pummelled by a fist in her face. She had broken fingernails on both hands. The doctor testified that she appeared to be in control of her emotions and did not appear to be intoxicated.

Evidence linking appellant to the crime was found at the scene, including a button from his shirt. Laboratory analyses of blood and semen were consistent with the theory that appellant was the assailant. Head hairs of V.B. and appellant were found on each other's clothing.

Mark Glad, bartender at the Pioneer Bar, identified both V.B. and appellant as having been in the bar the night of the crime. He testified that they sat next to each other virtually the entire evening. Glad did not see either V.B. or appellant leave, but believed they left about the same time, just before closing. When police showed Glad photographs of six men the day after the offense occurred, he identified appellant.

One week later, on January 3, the same photo display was shown to the victim with the addition of one photo. Appellant and possibly one other were wearing what appellant claims are jail garb. The photograph of appellant shows him wearing a dark blue shirt. The others were obviously in street clothes. All had facial hair although V.B. had already told police that her attacker was someone with no facial hair.

V.B. didn't think she recognized anyone at first. She looked again and said "oh yeah" and pointed to appellant's photo. She identified him by his eyes, by the lower area of his face, his teeth, nose and cheekbones.

Appellant maintained throughout the trial that he did not commit the assault. He testified that he had been living in Washkish, Minnesota. When he got up the morning of December 26, he took the bus to Duluth to report to the jail. When he arrived in Duluth, he went to several bars. He said he met a prostitute and had intercourse with her in her car. According to his story, she dropped appellant off at the Red Lion Bar when he had another beer before moving on to the Twins Bar.

Appellant then walked toward McGuire's Bar where he had a few drinks and met an acquaintance ("a big guy with short curly hair"). The two men stopped at the Pioneer Bar about 9:30–9:45 p.m.

Appellant took off his jacket and wool shirt to put them on the stool next to him. Appellant noticed a woman behind him. He saw that no other stools were open and started to reach over to pick up his clothes when she said "that's all right" and sat on his coat and shirt so he wouldn't have to hold them. Appellant maintains that the head hairs may have been transferred when V.B. sat on his clothes and that she picked up his button at the bar.

The trial court submitted a departure report indicating the reason for an upward durational departure was that the victim was treated with particular cruelty by gratuitous infliction of pain and injury; by threatening to kill her by strangling her with a wire; by forcing her to submit to multiple and different acts of sexual abuse and threatening others; and by committing the assault upon her on the ground when the temperature was below freezing and there was snow on the ground. The court cited comments by the presentence investigation agent, John Baney, that this was "the most brutal and animalistic" sexual assault he had ever reviewed. The court also cited the fact that V.B. is suffering ongoing terror for which she is receiving counseling.

## ISSUES

I. Was the photospread used to identify the assailant impermissibly suggestive?

II. Was the evidence sufficient to sustain appellant's convictions?

III. Should one of appellant's two convictions for first degree criminal sexual conduct be vacated?

IV. Did the trial court abuse its discretion by imposing an aggravated sentence?

V. Is appellant entitled to credit for time served in jail while he was a suspect, but which time he was serving on prior unrelated misdemeanor charges?

## ANALYSIS

### I.

Appellant argues that the victim's testimony identifying him as the assailant was tainted by an impermissibly suggestive photograph lineup. Appellant argues that the police improperly showed appellant wearing jail clothing and improperly displayed men with mustaches although the victim had described her attacker as having no facial hair.

■ Due process is violated if the photospread was so suggestive that there was a "very substantial likelihood of irreparable misidentification" by the witness. *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *State v. Bellcourt*, 312 Minn. 263, 264, 251 N.W.2d 631, 633 (1977). An identification based on an impermissibly suggestive photospread may taint a future in-court identification unless there are facts to show the courtroom identification has an independent origin. *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967). The theory is that the witness is apt to retain the memory of the photograph rather than that of the person actually seen. *Simmons*, 390 U.S. at 383–84, 88 S.Ct. at 970–71. This reduces the reliability of a subsequent courtroom identification. *Id.*

■ Reliability is the "linchpin" in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability is evaluated in light of the totality of surrounding circumstances. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Factors to be considered are 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Against these factors the court must weigh the corrupting effect of the suggestive identification. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253.

■ We hold that the photospread was not impermissibly suggestive. Despite appellant's argument that he was wearing jail garb in the photograph, he has failed to point to any evidence in the record on this issue. Additionally, the police properly included other men with mustaches in the photospread. *See Simberg v. State*, 288 Minn. 175, 180, 179 N.W.2d 141, 145 (1970) (police should attempt to show people in lineups who bear reasonable physical similarity to the accused). Even if the photo lineup were impermissibly suggestive, there was sufficient evidence on the *Biggers* factors to show the courtroom identification was reliable, even though the victim's description of the assailant was imperfect.

### II.

■ The scope of review on a claim that the evidence is insufficient to sustain a conviction is whether the jury could conclude beyond a reasonable doubt from the evidence in the record that appellant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978); *Adesiji v. State*, 384 N.W.2d 908 (Minn.Ct. App.1986). In making this assessment we must view the evidence most favorable to the State and assume the jury believed the State's witnesses and disbelieved contradictory evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981).

Based upon our review of the record we believe this standard has been met. Con-

trary to appellant's assertion, corroboration of the victim's identification of him is not required in this case. Minn.Stat. § 609.-347, subd. 1 (1984); *State v. Beard,* 380 N.W.2d 537, 541 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 3, 1986).

### III.

The parties agree that one of appellant's convictions must be vacated under Minn. Stat. § 609.04 (1984). *Beard,* 380 N.W.2d at 542; *see State v. Jackson,* 363 N.W.2d 758, 760 (Minn.1985). A defendant cannot be convicted twice for the same offense against the same victim based on the same act. *State v. Goodridge,* 352 N.W.2d 384, 389 (Minn.1984). Accordingly, appellant's conviction under section 609.342, subd. 1(c) is vacated.

### IV.

■ The salient ground stated by the trial court for departing was the particular cruelty which appellant inflicted upon the victim during the assault. This was a proper ground for departure under the sentencing guidelines. Minnesota Sentencing Guidelines II.D.2(b)(2); *State v. Southard,* 360 N.W.2d 376, 383 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. April 4, 1985) (particular cruelty alone can support an upward departure).

■ Baney's comments alone would not have been sufficient to support a departure. His report was not part of the evidence in the case and the defense had no opportunity to contradict his statements. Additionally, a probation officer's opinion should be used for dispositional purposes rather than duration of the sentence. *State v. Hagen,* 317 N.W.2d 701, 703 (Minn. 1982). We view the particular cruelty as adequate grounds to justify the departure, however.

The test is whether the cruelty inflicted was significantly greater than that inflicted in the typical case. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). Rape is by its nature a cruel act. Something more than the elements of the offense must exist

to justify a departure. *State v. Jeno,* 352 N.W.2d 82, 84 (Minn.1984). The question is whether the cruelty inflicted by appellant upon V.B. was greater than the personal injury already included as an element of the crime. Minn.Stat. § 609.341, Subd. 8 (1984) provides:

> "Personal injury" means bodily harm as defined in section 609.02, subdivision 7, or severe mental anguish or pregnancy.

"Bodily harm" is defined as follows:

> "Bodily harm" means physical pain or injury, illness, or any impairment of physical condition.

Minn.Stat. § 609.02(7). It is apparent that as an element of the crime, any personal injury will satisfy the element. Pain alone will suffice.

■ In this case the pain and injuries inflicted upon V.B. were greater than that contemplated by the personal injury element of the crime. V.B. was repeatedly struck in her face, so forcefully that some of her facial bones were broken. She was also bruised and bitten all over her body. The beating was continued for a period of time. Appellant also grabbed V.B. by her hair and repeatedly struck her head against a tree. He inflicted excessive, gratuitous pain upon her, more than was necessary to accomplish his criminal purpose.

### V.

Appellant requests credit for the time he spent in jail from December 27, 1984. Appellant argues that he was a suspect in the rape immediately upon his arrival at the jail on December 27, 1984. He was interviewed about the case that day and his photograph was taken. A search warrant was executed on December 28 and the investigation continued until he was charged.

Alternatively, he seeks credit from the date he was charged with the sexual assault. The State concedes that appellant is entitled to credit for the 58 days between the date he was charged, February 5, 1985, through the date he was sentenced, June 17, 1985.

Credit for time spent in custody is to be determined on a case-by-case basis, depending upon what is fair under the circumstances. *State v. Dulski,* 363 N.W.2d 307, 310 (Minn.1985); *State v. Zaycheck,* 386 N.W.2d 294 (Minn.Ct.App.1986). Several general rules apply to all cases, however. The court imposing a second sentence should decide whether the sentences are consecutive or concurrent. *Dulski,* 363 N.W.2d at 309. Failure to specify consecutive sentencing means that the sentence is concurrent. *Id.;* Minn.Stat. § 609.15 (1984). Credit against a sentence for time spent in custody is appropriate when the time is served "in connection with" the offense in question. Minn.R.Crim.P. 27.03, subd. 4(B).

We conclude that fairness requires that appellant be credited from the date he was charged with criminal sexual conduct. *See Zaycheck,* 386 N.W.2d 294. The sentences are concurrent since the trial court did not determine otherwise. Additionally, even though appellant was a suspect immediately upon his arrival at the jail for the misdemeanors, it was not until he was charged that his time in custody was served "in connection with" the assault charged.[1] *Cf. State v. Patricelli,* 357 N.W.2d 89 (Minn.1984) (defendant jailed in Chisago County was given credit against sentence imposed in Washington County for time served while Washington County placed "hold" on him).

## DECISION

The photospread was not impermissibly suggestive and did not taint the subsequent courtroom identification. The evidence was sufficient to sustain a conviction for first-degree criminal sexual conduct. One of appellant's convictions must be vacated. Accordingly we vacate the conviction under Minn.Stat. § 609.342, subd. 1(c).

An aggravated sentence was properly imposed on the grounds that appellant treated his victim with particular cruelty. Appellant is entitled to credit against his sentence for time spent in custody from the date he was charged.

Affirmed as modified.

---

1. The supreme court held in *State v. Dulski,* 363 N.W.2d 307 (Minn.1985) that jail credit should be applied where the prior sentence was based on a gross misdemeanor even though the Sentencing Guidelines technically don't apply to gross misdemeanors. The court stated that "Crediting the jail time against both sentences in such a situation does not give the defendant an unfair double credit but instead prevents a de facto departure resulting in consecutive service." *Id.* at 309–10. This reasoning logically extends to this case where the prior offenses are misdemeanors.