## STATE v. LEWIS HERMAN GLUFF.

172 N. W. (2d) 63.

November 7, 1969—No. 41067.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

OTIS, JUSTICE.

Defendant has been convicted of aggravated robbery, Minn. St. 609.245,[1] and sentenced to a term not exceeding 20 years, to be served concurrently with any term imposed as a result of prior convictions. The issue on appeal is whether the state has established defendant's identity beyond a reasonable doubt.

On the morning of December 2, 1966, at about 3:30 a. m., Mrs. Karen Weidemann was attending the registration desk at the Lakes and Pines Motel in St. Paul when three men entered the office and at gunpoint took from the cash register and safe about $300. The only evidence implicating defendant was an identification made by Mrs. Weidemann from "mug shots" furnished by the police and a lineup which occurred immediately thereafter.

Mrs. Weidemann testified that at the time of the robbery defendant was standing about 15 feet from her and that she had an opportunity to observe him for about 30 seconds. When she requested him to register, he drew a gun, pointed it directly at her, and told her to remain quiet and to open the cash register.

---

[1]Minn. St. 609.245 provides: "Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both."

At the preliminary hearing, Mrs. Weidemann testified that the entire episode took only about 80 seconds. At the trial, she indicated that it might have been as long as 2 minutes. However, she conceded that her eyes were riveted on the gun and that, understandably, she was nervous.

Although the lights were on, the condition of lighting was described as "uneven" because there were shadows.

The first description of the robbers given to the police by Mrs. Weidemann was of young men 19 to 20 years of age who looked like "college kids." She said they were unshaven but clean-cut. At trial, she conceded that defendant did not look like a "college kid of 19 or 20" and testified that when she first described defendant she was "not quite sure of anything * * *. It was happening very, very quickly."

At the time of trial, defendant was 32 years old with receding hair, a white 3/4-inch cyst above his right eye which contrasted with a ruddy complexion, a 1-inch scar from his lip to his chin, a cleft chin, and a deep crack in his lower lip. Mrs. Weidemann was shown several hundred pictures by the police before she identified the defendant on December 9, 1966, at about 1:30 in the afternoon. Immediately thereafter, at 1:45, defendant was brought in with two other men, one of whom was "quite a bit bigger" than defendant. She thereupon confirmed her identification.

The motel records disclosed that defendant had registered at the motel on November 26, 1966, using his proper name and address.

Defendant had two prior convictions for burglary, one for forgery, convictions under the Dyer Act, for escape, and for carrying concealed weapons. He did not take the stand on his own behalf. At the time of trial, he was on parole.

We have sustained convictions on identification by a single witness in a number of cases. State v. Walters, 262 Minn. 26, 113 N. W. (2d) 468; State v. Burch, 284 Minn. 300, 170 N. W. (2d) 543; State v. Garrity, 277 Minn. 111, 151 N. W. (2d) 773. The

identification need not be positive and certain to support a conviction. State v. Sutton, 272 Minn. 399, 138 N. W. (2d) 46; State v. Ellingson, 283 Minn. 208, 167 N. W. (2d) 55. The trustworthiness of an identification must necessarily be judged by the opportunity the witness has had for a deliberate and accurate observation of the accused while in his presence. By that test, we are of the opinion that Mrs. Weidemann's identification falters. Unlike the situation in Ellingson where the victim kept his eyes on the robber for 10 or 15 minutes in order to make an identification, Mrs. Weidemann saw this intruder for only a matter of some 30 seconds before he leveled a revolver at her. Thereafter her attention was riveted on the gun. Her description to the police was wholly at variance with her later identification, in contrast to the situation in State v. Garrity, *supra*.

The testimony of Mrs. Weidemann that she identified defendant at a lineup on December 9, although received without objection, clearly lacked probative value. The lineup consisted of just three persons, one of whom was substantially larger than defendant. More important, however, Mrs. Weidemann had only a few minutes earlier identified defendant from a picture in the police station. It is inconceivable that she would immediately thereafter fail to select defendant out of the lineup.

This is a case where, in our opinion, proof on the one critical issue is permeated with doubt. There was no corroboration of the identification. The victim had a limited opportunity to observe the robber briefly during a time when her attention was concentrated on a gun pointed at her.

Testimony received without objection that Mrs. Weidemann went through hundreds of photographs furnished by the police removed any doubt in the jury's mind that defendant had a prior criminal record. A number of recent cases have dealt with the problem of "mug shots" and lineups. United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149; Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. (2d) 1178; Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. (2d)

1199; Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. (2d) 1247; Biggers v. Tennessee, 390 U. S. 404, 88 S. Ct. 979, 19 L. ed. (2d) 1267. These cases suggest that a confrontation between the accused and the victim to establish identification "is peculiarly riddled with innumerable dangers." The Supreme Court has recently noted the caveat of Mr. Justice Frankfurter that "[t]he identification of strangers is proverbially untrustworthy." "The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference." United States v. Wade, 388 U. S. 218, 228, 240, 87 S. Ct. 1926, 1933, 1939, 18 L. ed. (2d) 1149, 1158, 1165. In Stovall v. Denno, *supra*, the court held that confrontation was a "critical stage" of the proceedings. The court there said that it was permissible to show the suspect singly to the victim but in ordinary situations this was condemned as a substitute for a lineup. In Simmons v. United States, *supra*, the court adopted the following rule (390 U. S. 384, 88 S. Ct. 971, 19 L. ed. [2d] 1253):

"* * * [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In the instant case there was no evidence whatever to corroborate defendant's implication in the crime other than Mrs. Weidemann's selection of a photograph from a police file.[2] Necessarily, the pictures were limited to those who had criminal records. It is common experience in the trial of criminal cases that testimony of identification from such a gallery makes defendant's conviction almost a foregone conclusion.

---

[2]Defendant produced two students of the Vocational School in St. Paul who testified that they were in his company continuously during the early morning of December 2, when the robbery occurred.

Upon a retrial, the propriety of Mrs. Weidemann's testimony disclosing by inference defendant's criminal record, and the admissibility of evidence based on the lineup procedures which were followed should be scrutinized by the trial court in light of the cases we have cited.

For the reasons stated, we hold that a new trial in the interest of justice is required.

Reversed and remanded for a new trial.