## STATE v. HERRICK HELLEM.

185 N. W. (2d) 698.

March 19, 1971—No. 40074.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Keith M. Brownell,* County Attorney, and *Thomas J. Bieter,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Kelly, JJ.

NELSON, JUSTICE.

Defendant, Herrick Christian Hellem, appeals from a conviction of kidnapping, aggravated robbery, and rape following a jury trial and from an order denying his motion for a new trial.

The facts are as follows: On April 21, 1964, Frederick Martin, Jr., 19 years old, an airman at the Duluth Air Base, and Carol Suihkonen, also 19, were parked in a "lovers' lane" near Lake Superior, a few miles north and east of Duluth. At approximately 9:15 p. m., an armed, heavy-set man wearing glasses and a bandanna over his face opened the driver's door and required Martin to walk to the rear of the car, where Martin noticed a second masked man, more slightly built than the first man.

Martin was then locked in the trunk of his car and the two men drove off in Martin's car with Miss Suihkonen seated between them. After a few minutes of aimless driving, Miss Suihkonen was also placed in the trunk. When the car became stuck in a ditch approximately a half hour later, the heavy-set man opened the trunk, ordered Miss Suihkonen out, and robbed Martin of his billfold before relocking him in the trunk. During the estimated 2 or 3 minutes which this took, Martin and Miss Suihkonen had a chance to look at the maskless face of the heavy-set man. The only light available at that time was from the headlights of another car parked one-half to two blocks behind Martin's car.

The men then drove off in the second car with Miss Suihkonen. According to her testimony, the two men alternately forced her

to have intercourse with them twice each before they returned her to Duluth and released her within a block of her home shortly after 11 p. m. After 5 minutes in the bathroom of her home with her sister, Miss Suihkonen answered "yes" to her mother's question as to whether or not she had been molested.

Martin was able to release himself from the trunk of his car and called the police before Miss Suihkonen was released. Deputy Sheriff Dale Lawrence answered the call and took Martin to the Suihkonen residence where the deputy suggested that Carol be medically examined. Tests revealed that she had had sexual intercourse that evening. There were no bruises, lacerations, or abrasions.

The following morning, April 22, 1964, a caretaker reported a burglary of the Donald MacDonald residence. Drapes left open the night before had been drawn by the burglars, a flashlight was found in the house, and light bulbs in the garage and garage hallway had been unscrewed. Latent fingerprints lifted at the scene were later identified as those of defendant and one Barry Norman Jackson.[1]

On that same morning, some children found a loaded revolver in the chassis of an automobile parked behind the house in which Jackson and defendant lived. Defendant claims he realized he had misplaced his gun the previous evening, and that when he and Jackson saw the police car and the police who were investigating the gun at the residence next door, they left town, heading south. The police quickly discovered that the gun had been stolen in an earlier burglary and returned to search the garage and residence of defendant. Items taken in the MacDonald burglary were found in the garage. On April 28, 1964, a complaint was signed against defendant for the MacDonald burglary.

Defendant and Jackson returned voluntarily from Dallas, Texas, on June 2 and turned themselves in the next day, ad-

[1] Jackson was convicted of robbery, kidnapping, and rape in a separate trial. His conviction was affirmed by this court. State v. Jackson, 275 Minn. 462, 147 N. W. (2d) 689.

mitting the MacDonald burglary. They each appeared in a separate five-man lineup before Martin and Miss Suihkonen, who had previously been shown pictures of defendant. Both victims identified defendant as the heavier of the two assailants. On August 21, 1964, 2½ months later, defendant was charged with robbery, kidnapping, and rape, came in voluntarily when called, and was arrested.

Defendant moved for a change of venue, which motion was denied. Thereafter, the information was amended to strike the burglary charge, and defendant was convicted on two counts of kidnapping, aggravated robbery, and rape on February 2, 1965. He was represented by court-appointed counsel. Defendant's motion for a new trial was denied in an order dated April 1, 1965. Judgment was entered and a 7- to 30-year sentence imposed on April 5. Notice of appeal from the judgment and order denying a new trial was filed in this court on September 17, 1965. Defendant was thereafter granted parole on October 13, 1969. In this appeal he seeks acquittal or a new trial.

Defendant raises two issues: (1) Whether the evidence was sufficient to justify the jury verdict; and (2) whether defendant was denied due process of law and a fair trial.

Citing State v. Gluff, 285 Minn. 148, 172 N. W. (2d) 63, defendant contends that his identification by both complainants fails to meet the standard established by this court to determine the weight which a jury is entitled to give an identification. We find little merit in this contention. There were two witness-complainants who independently identified defendant, and their opportunities for observation were superior to those of the witness in Gluff, who admitted her eyes were fixed on the robber's gun. Defendant appeared and was identified at the Jackson trial, and Jackson appeared at defendant's trial so that the jury could view each person in light of the extensive testimony on the lineup procedures employed. The record indicates that the trial judge thought Jackson's appearance proper, since the defense had challenged the victims' identification on cross-examination.

The issue of identification was fully considered by the jury. They viewed defendant; they viewed Jackson; they viewed the mug shots which contained physical descriptions and ages of the other lineup participants. Moreover, the record is clear that defendant made no objection to the lineup and in-court identifications before or during trial, but relied on cross-examination. Besides direct evidence of identification, the prosecution presented circumstantial evidence connecting defendant and Jackson in the crimes charged: They spent the evening together, committed the MacDonald burglary, and hurriedly left town together upon seeing the police near their home the next morning. Taken as a whole, we think the evidence was sufficient to justify the jury's verdict of guilty after a trial which was fair and conducted in a manner which accorded defendant due process of law.

Affirmed.

MR. JUSTICE ODDEN took no part in the consideration or decision of this case.