STATE v. ROBERT BURGESS.

185 N. W. (2d) 537.

March 26, 1971—No. 41922.

C. Paul Jones, State Public Defender, and Rosalie E. Wahl, Assistant State Public Defender, for appellant.

Warren Spannaus, Attorney General, George M. Scott, County Attorney, and Henry W. McCarr, Jr., and David G. Roston, Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Odden, JJ.

PER CURIAM.

Defendant has been found guilty of burglary and appeals from his conviction.

At about 4:15 in the morning on July 3, 1968, one Paul Miller was awakened by the sound of breaking glass. He looked out and saw two men walking toward the broken window of a furniture store across the street at 3725 Chicago Avenue, Minneapolis. The shorter of the two men hit the broken window with some object and reached inside. Miller called the police and described the suspects, saying that one was tall and was wearing a light-colored shirt and trousers and no jacket. This man was later identified as defendant. The other burglar was short, heavy-set, and pugnosed. He was subsequently identified as one Robert Wells.[1] About half an hour later, the police apprehended the two suspects three blocks from the scene of the burglary. They denied any connection with the offense and claimed to have approached from a different direction. However, there was fresh grass on their shoes which the police testified came from a newly mown lawn on which

---

[1] Wells subsequently pled guilty to the burglary but did not testify in the prosecution against defendant.

their footprints were visible in the dew, leading diagonally from the area of the burglary to the place where defendant was arrested.

1. Defendant challenges the sufficiency of the identification. Miller was in a second-floor apartment about 80 feet from where he first saw the men standing, and he observed them for only about a minute. This, defendant asserts, does not meet the test we required in State v. Gluff, 285 Minn. 148, 172 N. W. (2d) 63. However, in Gluff, there was no corroborating evidence of identification, and the victim's initial description of the robber was inconsistent with the actual appearance of defendant. While we agree that the opportunity for careful scrutiny in the instant case was slight, the disparity in the size of the two burglars and the character of their clothing, with one discrepancy, conformed to the description of the men who were taken into custody a relatively short time later in the immediate vicinity. Presumably, there were few persons on the street answering that general description at that time of day. While it is true that Miller first described defendant as wearing no jacket and when defendant was apprehended he had on a dark coat, we do not regard this as a fatal discrepancy and hold that the identification was sufficient to sustain the conviction.

2. During a recess, the prosecutor showed Miller the clothing which defendant was wearing when taken into custody. Defendant claims that Miller then changed his testimony so that his description of defendant would conform to defendant's actual appearance at the time of his arrest. Counsel at that point moved for a mistrial which was denied. We see no impropriety in showing the witness the clothing defendant was wearing, provided the prosecutor promptly revealed that fact to defendant. Here, defendant had an opportunity to impeach Miller's testimony by disclosing to the jury how his memory had been refreshed. Hence we find no prejudice to defendant.

3. In his closing argument, the prosecutor stated:

"Now, I submit to you that in my opinion this young man is entitled to some degree of credit for getting out of bed, determining where the crash sounds were coming from, and then taking the time and the trouble and effort to report it. Needless to say, too many would be inclined to go back to bed and say, 'Well, forget it, because it doesn't involve me.' But he did not. He did his civic duty by reporting to the police * * *.

* * * * *

"* * * He told you what he saw. He told you what he did about it, and for that he is entitled to some credit."

It is argued that this was tantamount to expressing the prosecutor's personal belief in the credibility of the witness. The correct rule is embodied in the minimum standards for prosecution and defense, A. B. A. Project on Minimum Standards for Criminal Justice, The Prosecution Function and The Defense Function (Approved Draft, 1971) § 5.8(b), as follows:

"It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."[2]

We find no impropriety in the statement to which defendant objects. According a citizen credit for doing his civic duty is not equivalent to expressing a personal opinion that the witness is entitled to credence.

4. Finally, because the trial court refused to permit testimony concerning a lineup identification, defendant asserts that the state had the burden of proving the in-court identification was not tainted, citing United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149. We hold that there was a sufficient showing that Miller's identification was not dependent on what transpired at the lineup to support the conviction, and therefore affirm.

Affirmed.

---

[2] The Prosecution Function and The Defense Function (Approved Draft, 1971) § 5.8, *Commentary* b, provides in part: "The line between permissible and impermissible argument is a thin one. Neither advocate may express his personal opinion as to the justice of his cause or the veracity of witnesses. Credibility is solely for the triers, but an advocate may point to the fact that circumstances or independent witnesses give support to one witness or cast doubt on another. The prohibition goes to the advocate's personally endorsing or vouching for or giving his opinion; the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own."