**STATE of Minnesota, Respondent,**

v.

**Fred M. THOMPSON, Appellant.**

**No. C2-87-136.**

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Denied Jan. 15, 1988.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Steven P. Russett, Ass't. State Public Defender, St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a judgment of conviction and sentences imposed for aggravated robbery, second-degree assault, and first-degree burglary. Appellant Fred Thompson was sentenced to 97 months for the aggravated robbery and a consecutive term of 24 months for the first-degree burglary conviction. He was not sentenced on the assault conviction. We affirm and reduce the burglary sentence to the presumptive concurrent sentence.

## FACTS

On May 21, 1986, at about 11:00 p.m, the victim, Roger Lind, was working on the electrical system under the dash of his car, which was parked on the street in front of his residence. The driver's door to the car was open and Lind had a trouble light in his hand. Lind heard a scuffling noise, turned his head and was struck in the mouth by a steel object. A number of Lind's teeth were chipped or broken, and some were forced up into the roof of his mouth.

After being hit, Lind looked up at his assailant, who pointed a revolver at Lind's head, and told him to turn off the trouble light. The assailant then broke the bulb of the light himself. Lind testified he had from ten to thirteen seconds to look at the assailant's face. The assailant then put a nylon stocking over his face. He and an accomplice forced Lind to lead them up the stairs to his second-floor apartment.

In the apartment, Lind was forced at gunpoint to lie on his stomach while the apartment was ransacked. A VCR and other items were stolen.

Lind described his assailant to the first police officer on the scene as: "an Indian male, 25 to 30 years, 5'7" to 8" tall, 180 pounds, thin mustache, round face." The accomplice was wearing a mask, and Lind could not describe him or identify his race. Lind told the officer he "may have recognized" the assailant.

Lind and his roommate suspected a neighbor, Charles Pemberton, was involved in the burglary. Lind had known Pemberton, an Indian who lived two houses from him, for about two years, and had been to his house. Lind's roommate testified he avoided Pemberton because of this suspicion.

In early July, Pemberton approached Lind at his house and told Lind he knew who did the robbery. Lind testified Pemberton told him some details about the accomplice, but he could not remember what Pemberton told him about his assailant. Pemberton also told Lind he could get the stolen VCR.

Charles Pemberton testified Thompson had come to his house a couple of days after the robbery and told him he had pistol whipped a white man and robbed him of a VCR. Thompson offered him the VCR and Pemberton bought it for $50. Pemberton later learned Lind had been burglarized and that he suspected Pemberton of doing it. He went to talk to Lind and told him he was seriously mistaken, and that they could "straighten it up right there and then." Pemberton then told Lind that Fred Thompson had done it, and that the accomplice was a black man. Pemberton testified that Lind himself brought up Thompson's name as one he suspected in the burglary.

Pemberton was arrested on another charge and offered a deal in exchange for his information on the Lind burglary. It was agreed Pemberton would not be prosecuted for any involvement in that burglary or for the charges under investigation. The police officer testified there was no evidence Pemberton was involved in the Lind burglary, or the other incidents. Pemberton admitted he had lied to the police about one of the incidents under investigation. The trial court allowed Pemberton's prior conviction for welfare fraud to be used for impeachment.

Lind was called in, re-questioned, and shown a photo lineup. Lind, for the first time, described the accomplice as a black man, indicating what Pemberton had told him about a black accomplice. Lind identified Thompson's photograph from the photo display. Pemberton's tip on the black accomplice was found to be unreliable.

Thompson presented alibi witnesses to show he was on the White Earth Reservation at the time of the burglary. Thompson did not testify, the trial court having ruled his prior felony convictions could be used for impeachment purposes.

In rebuttal, the state called Pemberton's brother Garr, who testified he saw Thompson in Minneapolis the day before the burglary. Defense counsel elicited the fact Thompson owed Garr Pemberton some money. Garr Pemberton then revealed, in response to questioning on redirect con-cerning the circumstances of the loan, that he had given Thompson bail money when he was arrested. The defense objected and the jury was ordered to disregard the statement.

The jury found Thompson guilty of all three counts. The court sentenced Thompson to the presumptive sentence on the aggravated robbery, 97 months, and to a consecutive sentence of 24 months on the burglary charge. The consecutive sentence represented a departure from the guidelines. Minn. Sentencing Guidelines II. F. At the sentencing hearing, the court stated only that it had had "a chance to listen to the victims, to weigh their testimony, see what happened and think about it in a little bit more depth." No other reasons were given for the departure.

## ISSUES

1. Did the trial court abuse its discretion in determining appellant's prior offenses could be used for impeachment?

2. Did the trial court abuse its discretion in denying the jury's request to see the photo display exhibit during its deliberations?

3. Was appellant denied his right to a fair trial by references made to his previous arrest?

4. Was the evidence of identity sufficient to sustain the convictions?

5. Did the trial court err in departing by imposing consecutive sentences?

## ANALYSIS

### 1. Impeachment

█ The trial court ruled it would allow Thompson's four prior convictions, a 1974 manslaughter conviction for which Thompson was paroled in 1981, a 1982 burglary conviction, and two 1984 convictions for receiving stolen property, to be admitted for impeachment purposes. The admissibility of the convictions must be determined by balancing their probative value against their prejudicial effect. *See* Minn.R.Evid. 609(a), (b). Applying the five-factor balancing test identified in *State v. Jones*, 271

N.W.2d 534, 538 (Minn.1978), we conclude the trial court did not abuse its discretion in ruling them admissible.

The manslaughter conviction was 12 years old, but Thompson was not released until 1981 and committed another crime within a year; therefore, it had not lost its relevance. The burglary offense was similar to one of the charged offenses, a factor weighing against its admission. *See State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980). Even the use of the same offense for impeachment purposes, however, is not absolutely barred. *State v. Brouillette*, 286 N.W.2d 702, 707–08 (Minn.1979).

The court may exclude even a relevant prior conviction if it determines that it is more important that the jury hear the defendant's version of the facts. *Bettin*, 295 N.W.2d at 546. Thompson's testimony in support of his alibi defense would only have corroborated the testimony of the two alibi witnesses he presented. Thompson could have presented testimony rebutting that of Charles Pemberton, even pinning the offense on him. However, in that case Thompson's credibility would have been central to the case. *See Jones*, 271 N.W.2d at 538. Moreover, Pemberton was himself impeached by a prior conviction and evidence was brought out he was suspected of other offenses. Thompson would not be entitled to shield his own prior record while exposing that of Pemberton.

### 2. Photo display

The trial court did not allow the photo display from which Lind identified Thompson to go to the jury room. During its deliberations, the jury requested this exhibit, but the court denied the request, stating the photos were not admitted into evidence as exhibits for the jury.

The photo display was offered as a court exhibit. Defense counsel did not object to this procedure. Any suggestiveness in the display could have affected the weight the jury gave Lind's identification of Thompson. *See State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969); *see also State v. Specht*, 359 N.W.2d 612, 613 (Minn.1984) (court should have admitted photographic display to allow defendant to show any suggestive nature). Thompson, however, waived this issue by failing to object. Moreover, it is evident from the exhibit that the photo display was not suggestive.

### 3. Reference to appellant's previous arrest

■ The state's rebuttal witness, Garr Pemberton, referred to Thompson's previous arrest on other charges in explaining the circumstances of Thompson's debt to him. The loan, however, was an issue raised by defense counsel on the last question of cross-examination. There is no indication the prosecutor, following up on redirect, intentionally elicited the reference. *See State v. Richmond*, 298 Minn. 561, 563, 214 N.W.2d 694, 695 (1974) (court in assessing prejudice attaches some importance to whether the prosecutor intentionally elicited the reference).

### 4. Evidence of identity

Thompson claims the evidence of identification was insufficient to sustain the convictions. He claims Lind's identification was based on fleeting or limited observation and is therefore unreliable. *See State v. Spann*, 287 N.W.2d 406, 407 (Minn.1979). He also contends that the identification was influenced by Charles Pemberton.

■ Lind testified he observed his assailant's face from close range, with adequate lighting, for ten to thirteen seconds. This was more than a fleeting opportunity for identification. Moreover, Lind's identification was corroborated by Pemberton's testimony that Thompson admitted committing the burglary. *See Spann*, 287 N.W.2d at 407–08 (identification based on fleeting observation must have corroboration).

Lind gave a consistent description of his assailant from the night of the offense to his later interviews with police. This description fit Thompson, whom Lind identified from the photo display. *Cf. State v. Gluff*, 285 Minn. 148, 172 N.W.2d 63 (1969) (conviction reversed where the eyewitness' initial description was entirely different from the appearance of defendant, whom the witness identified from a lineup).

The possibility that Lind was influenced by Pemberton was thoroughly explored, and it was for the jury to determine whether Lind's identification was credible, or was the subject of improper influence. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978) (reviewing court must defer to jury's opportunity to assess the credibility of the witnesses).

### 5. Sentencing departure

Thompson contends the consecutive sentence for the aggravated robbery conviction was an improper departure from the guidelines because the trial court failed to give any reasons for the departure. At the sentencing hearing, the trial court granted the state's request for consecutive sentencing, stating:

> What happens, however, is that when you go to trial, the Court and the rest of the people have a chance to listen to the victims, to weigh their testimony, see what happened and think about it in a little bit more depth and to weigh a number of other factors.

The supreme court in *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985), adopted prospectively a rule providing in part:

> If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.

*See also State v. Pendzimas*, 379 N.W.2d 247, 249 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. March 14, 1986) (departure not allowed where reasons not stated on the record and written departure report not filed until four months after sentencing).

■ The trial court's reference to trial testimony was not a statement of reasons for departure. Since the rule was announced in *Williams*, a bare reference to the testimony heard has not been held sufficient to state aggravating factors justifying a departure. *Cf. State v. Peterson*, 405 N.W.2d 545 (Minn.Ct.App.1987) (affirming a departure in a postconviction relief case in which sentencing occurred prior to *Williams*, and a written departure report had been filed). The state does not contest Thompson's assertion that no written departure report has been filed. We reduce Thompson's sentence to concurrent terms of 97 months and 24 months.

### DECISION

The trial court did not abuse its discretion in allowing use of prior convictions for impeachment, or in keeping the photo display from the jury. References to Thompson's prior arrest was not so prejudicial as to deny him a fair trial. The evidence of identity was sufficient to sustain the convictions. The trial court did not state its reasons for departing by imposing consecutive sentencing. The sentence is modified to the presumptive concurrent terms of 97 months and 24 months.

Affirmed as modified.