STATE of Minnesota, Respondent,

v.

Joseph MYERS, Appellant.

No. C3–87–162.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Granted Nov. 24, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., Marcy S. Crain, Asst. Co. Atty., Anoka, for State of Minnesota, respondent.

C. Paul Jones, State Public Defender, Catherine Y. Middlebrook, Asst. Public Defender, Minneapolis, for Joseph Myers, appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK, and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment of conviction of possessing stolen property, Minn. Stat. § 609.53, subd. 1(1) (1986), and unauthorized use of a motor vehicle, Minn.Stat. § 609.55 (1986). Appellant Joseph Myers was found guilty by a jury of both counts and sentenced to 109 months for possessing stolen property and to a concurrent sentence of 23 months for the unauthorized use offense. We affirm as modified.

## FACTS

Appellant Joseph Myers was charged with possessing stolen property and unauthorized use of a motor vehicle following the discovery of a large quantity of stolen outboard motors in a stolen U–Haul truck abandoned in the city of Fridley in the early morning of June 23, 1986.

Fridley police officer Brad Pearson was patrolling in a marked squad car about 2 a.m. on June 23, 1986, driving southbound on Central Avenue. At the intersection of Central and 69th he observed a large U–Haul truck stopped on 69th Avenue waiting for the red light. Considering the vehicle suspicious for the area, he took a left turn onto 69th, passing in front of the truck, to observe the driver.

Pearson testified there were three street lights at this intersection. He testified he was from 25 to 30 feet away from the truck when he made his observation of the driver, and that it lasted from 2 to 3 seconds.

The U–Haul truck made a right turn on Central Avenue, and Pearson drove through the Medtronics parking lot located on that corner to investigate further. He saw the truck parked in a corner of the parking lot, and briefly saw the driver but from too far away to see the driver's face. By the time he reached the vehicle the driver was gone. When a canine unit arrived to track the driver, only a tennis shoe print on the bank of nearby Rice Creek could be discovered. The officers found a shipment of outboard motors inside the truck, later found to be stolen from Hallberg's Marine in Wyoming, Minnesota. The truck's ignition had been pulled out, indicating it had been hot-wired.

Pearson reported the following description of the driver:

A white male, 25 to 30–years of age, long dark hair, dark beard, wearing a dark T-shirt, medium build and medium height.

A friend of the family with whom Myers had been staying had very recently begun giving information to Anoka City Police concerning activities at the residence, including alleged drug use, drug dealing and burglaries. Bonnie Brock testified she initiated her conversations with police, and did not seek or receive any deals from them.

Brock testified that on June 26, 1986, three days after discovery of the outboard motor theft, she stopped to talk to Myers at the house. She testified Myers told her he had taken some motors in a U–Haul truck and fled when he saw a police officer. She added that Myers said he had gotten the motors in Wyoming (Minnesota).

Myers had been arrested in Anoka on June 19 in connection with another burglary, but released the same day. After receiving Brock's tip, Investigator Foss took a photographic display including Myers' recent booking photo to Pearson's home. The display included five photos, all of men who had a mustache, as did this photo of Myers, and none of whom had a beard, as Pearson had initially reported the U–Haul driver had. Foss took a statement from Pearson while he showed him the photos. The statement was taped. Foss denied telling Pearson they had a suspect in the case.

Pearson pointed out Myers' picture, and said, "if you put a beard on him, I'd say this would be the man." He described the driver as he had before, stating he had a dark beard, adding the driver had a "slender face with hollow-set eyes." Foss took the same photo display to Bonnie Brock, who identified the picture of Joseph Myers.

The State filed a Certificate of Non-Disclosure of its informant prior to the omnibus hearing. *See* Minn.R.Crim.P. 9.01, subd. 3(2). Defense counsel was given the informant's name on the first day of trial. Myers did not learn her identity until she testified. The court questioned defense counsel whether he had received adequate time to investigate Brock's story prior to

cross-examining her. Defense counsel detailed the defense investigation conducted. Myers agreed with his attorney's statement that there had been enough time for investigation. The court offered to allow defense counsel to recall Brock for further cross-examination if he discovered more information.

The trial court permitted Investigator Foss to testify, over a hearsay objection, to statements made to him by Bonnie Brock. Foss testified Brock told him of Myers' statement to her concerning the outboard motor robbery on June 30. This testimony was allowed for corroborative purposes.

Myers presented an alibi defense, consisting of the testimony of two women, each an employee of a bar Myers frequented, that he was at the bar the evening of June 22, stayed until closing and then accompanied one of them to an all-night party. One woman testified she was certain of the date, while the other was not certain. Both women testified Myers never had a beard, and one stated she had never seen him wear tennis shoes. A jailer for the county testified Myers did not have a beard when he was arrested four days before the robbery.

Myers testified to his alibi defense and denied the conversation with Bonnie Brock. He claimed Bonnie Brock had tried to trade him prescription drugs for cocaine. He testified Investigator Foss sought to persuade him to exchange information for a "deal" on the current charges.

The jury found Myers guilty of both charges. The trial court sentenced him to 109 months for possessing stolen property, a 1.5 times departure for a defendant with Myers' criminal history score of six. The court based the departure on the value of the property stolen, which, at $99,389, was well above the statutory minimum for the offense, $2500.

## ISSUES

1. Did the trial court err in finding the photographic display was not impermissibly suggestive?

2. Was appellant denied his right to a fair trial by the State's failure to disclose an informant witness prior to trial?

3. Did the trial court abuse its discretion in admitting testimony corroborating the informant's testimony?

4. Was the evidence sufficient to sustain the convictions?

5. Did the trial court err in imposing an upward departure based solely on the value of the stolen property?

## ANALYSIS

### 1. *Photographic Display*

■ Myers contends the photographic display was impermissibly suggestive and Pearson's identification was unreliable and strongly suggested by the improper procedure.

A photo display cannot be so suggestive it creates "a very substantial likelihood of irreparable misidentification." *State v. Bellcourt*, 312 Minn. 263, 264, 251 N.W.2d 631, 633 (1977). Myers claims the display was flawed because Pearson had described the driver as having a beard. The claim the display must follow the witness' description exactly, however, was rejected in *State v. Blegen*, 387 N.W.2d 459, 463 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. July 31, 1986), where the display showed men with mustaches although the victim had noted no facial hair. The men in the display all bore a reasonable physical similarity to Myers. *See id.*

Myers emphasizes the changing details of Pearson's description of the U–Haul driver, particularly the modification of "beard" to "facial hair." Since the photo display was not impermissibly suggestive, however, the accuracy of Pearson's earlier description goes to weight and not admissibility. *State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969).

### 2. *Failure to Disclose Informant Witness*

■ The prosecution may withhold disclosure of an informant witness by filing a written certificate stating disclosure may subject the witness or others to physical harm or coercion. Minn.R.Crim.P. 9.01, subd. 3(2). The trial court must make a record of the state's evidence of possible intimidation and determine its sufficiency. *State v. Hathaway*, 379 N.W.2d 498, 506 (Minn.1985). The trial court did not do so in this case. We believe, however, the trial court alleviated any prejudice to Myers from the delayed disclosure.

Defense counsel, who was given the informant's name the day trial began, received copies of statements given by Brock to the police and a summary report of Brock's relationship with Anoka police by the second day of trial. The court recessed trial after Brock's direct examination to allow more time to prepare cross-examination. A defense investigator had time, from the first day of trial, to investigate Brock's background.

The effect of the delayed disclosure depends on what evidence Myers could have discovered to impeach Brock. *Cf. State v. Schwantes*, 314 N.W.2d 243, 245 (Minn. 1982) (non-disclosure induced defense tactic which resulted in admission of damaging testimony). Myers does not indicate what additional information would have been obtained given prompt disclosure. Nor does he show how the State's claim that Brock was in danger of harm was deficient, so as to entitle him to disclosure.

### 3. *Foss' Testimony Corroborating Brock*

■ Minn.R.Evid. 801(d)(1)(B) provides a statement is not hearsay if the declarant testifies and is available for cross-examination and the statement is consistent with the testimony and is offered to rebut a charge of recent fabrication or improper influence. Brock's statement to Foss was merely a repetition of her statement four days earlier to Anoka City Police. Even if Myers claimed a "recent" fabrication or improper influence, arising between the two statements, the statement to Foss was later and therefore presumably as greatly influenced. *Cf. State v. Sullivan*, 360 N.W.2d 418, 422 (Minn.Ct.App.1985) (approving admission of videotaped statement

of child victim of alleged sexual abuse where the statement was made before the alleged coaching by the mother). Foss' testimony, however, was merely cumulative, and the error in its admission harmless. *See State v. Zeimet,* 348 N.W.2d 338, 340–41 (Minn.1984) (evidence of witnesses' statements to police and grand jury was cumulative to their testimony at previous trial, and its admission harmless). The jury could have assumed Brock repeated her story a number of times to police, and had no reason to state it differently to county authorities than to city police.

### 4. *Sufficiency of the Evidence*

 Myers contends the evidence was insufficient to support the convictions. The standard of review is limited to determining whether the jury, acting with due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could have reasonably concluded the defendant was guilty. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978).

Identification of the defendant as the person who committed the crime may rest on the testimony of a single witness. *State v. Gluff,* 285 Minn. 148, 150, 172 N.W.2d 63, 64 (1969). The supreme court in *Gluff* reversed a conviction based on a single eyewitness' testimony where the witness did not have an opportunity for deliberate and accurate observation of the defendant. *Id.* at 152–53, 172 N.W.2d at 66. Pearson's identification of Myers was corroborated by Brock's testimony, and his initial description of the driver did not vary greatly from his later descriptions or from the appearance of Myers, despite the discrepancy between "beard" and "facial hair."

The reliability of an eyewitness' identification must be judged based on:

1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness at the con-frontation, and 5) the length of time between the crime and the confrontation. *State v. Blegen,* 387 N.W.2d at 463 (citation omitted).

Pearson only viewed the driver for two to three seconds, from a distance of 25 to 30 feet. However, he was a police officer, accustomed to close observation, and he was under no stress such as that experienced by the typical victim. Pearson maintained his description of the driver in a relatively consistent manner throughout the proceeding, and was sufficiently positive of the identification. The photo display occurred only a week after the incident.

The credibility of Brock's testimony, and of the testimony of Myers' alibi witnesses, was for the jury to determine. We must assume the jury believed the State's witnesses and disbelieved any contrary evidence. *See State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

### 5. *Upward Departure*

 The trial court imposed a sentence 1.5 times greater than the presumptive sentence for possessing stolen property, deviating from the sentencing guidelines based on the monetary value of the stolen property. The departure was based solely on the "disparity in value between the statutory minimum and the value of the property in the crime to be sentenced."

The guidelines state generally a departure should be "proportional to the severity of the offense." Minnesota Sentencing Guidelines II.D. They do not provide specifically for the amount of loss to be considered as an aggravating factor except within the category of "major economic offense." *See id.* II.D.2.b(4)(b). Myers' offense is not a major economic offense because it is not an offense "committed by other than physical means." *Id.; cf. State v. Wittig,* 343 N.W.2d 711, 714 (Minn.Ct. App.1984) (monetary loss substantially exceeding the usual offense was a proper aggravating factor for a major economic offense).

The trial court reasoned because the legislature provided for a gradation of of-

fenses within the statute based on the amount of stolen property received or possessed, the amount of loss could be considered an aggravating factor. The amount of the stolen property received or possessed, however, is an element of the offense. Minn.Stat. § 609.53, subd. 1(1) (1986) (property greater than $1000). As such it cannot be used as an aggravating factor. *State v. Vikeras,* 378 N.W.2d 1, 4 (Minn.Ct.App.1985). Where an economic offense is committed by physical means, the apparent guidelines intent is to focus on the means of committing the offense in assessing its severity. Since there were no aggravating factors, we reduce the sentence for possessing stolen property to the presumptive term of 73 months. *See* Minnesota Sentencing Guidelines II.B.2 (adding three months for offense committed while in custody status by an offender with a criminal history score of six or more).

### DECISION

The trial court did not err in finding the photo display was not impermissibly suggestive. Appellant was not denied his right to a fair trial by the state's failure to disclose the informant witness. Admission of testimony corroborating the informant was not prejudicial error. The evidence was sufficient to sustain the conviction. The value of the stolen property appellant was convicted of possessing was not a proper aggravating factor, and his sentence is reduced to 73 months.

Affirmed as modified.