*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0483**

State of Minnesota,
Respondent,

vs.

Filbert Okari Onyoni,
Appellant.

**Filed January 30, 2017
Affirmed
Halbrooks, Judge**

Benton County District Court
File No. 05-CR-15-38

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Philip K. Miller, Benton County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that the evidence is insufficient to sustain his conviction. We affirm.

# FACTS

Appellant Filbert Okari Onyoni and A.S. met at a park near A.S.'s home in St. Cloud. A.S. told Onyoni her age, which was 15 years old at the time. Onyoni was 37 years old.

One week after they met, A.S. met Onyoni's girlfriend, J.G., at the same park. A.S. had to use the bathroom, so J.G. invited her to use the bathroom in Onyoni's apartment. While A.S. was inside his apartment, Onyoni grabbed her breast over her clothes. She felt uncomfortable and left.

The next day, Onyoni picked up A.S. from school, and they went back to his apartment. On the way back to his apartment, Onyoni "was talking about how he was going to f--k" A.S. After they arrived, Onyoni and A.S. engaged in oral and vaginal sex. After school the following day, A.S. went to Onyoni's apartment to hang out with J.G. After J.G. fell asleep on the living room floor, Onyoni and A.S. had sex multiple times. Twice that day, his penis was in her vagina, and she "had his penis in [her] mouth."

A.S. and Onyoni continued to meet approximately two times per week. Onyoni, who drove a black Jaguar, would always pick up A.S. after school. Sometimes they coordinated in advance through Facebook, and other times he showed up unannounced. They had sex every time they were together.

Onyoni messaged A.S. on Facebook on numerous occasions, talking about their sexual relationship. He asked her to come over to his apartment so that they could have sex a couple of times and offered to pay her for sexual favors. Following sex on one occasion, Onyoni asked A.S. if she had taken a morning-after pill, an emergency

contraceptive that prevents pregnancy after unprotected sex. Onyoni stated in another Facebook message to A.S., "Luckily you didn't give me any [sexually transmitted diseases]." He also told A.S. that he "was planning to take [her] to Jamaica and give [her] cute babies." In addition to their conversations on Facebook, Onyoni sent A.S. pictures of a sexual nature via Facebook. One picture was of an erect penis. When A.S. initially spoke with law enforcement about her sexual relationship with Onyoni, she stated that she could not tell whether the penis in the picture was Onyoni's but that it "looked familiar." Testifying at trial, A.S. identified the penis as Onyoni's. A.S. also testified that "the way [Onyoni] typed was kind of the way he talked," and she never thought that the person sending these messages was anyone other than Onyoni.

A.S. spoke with a friend, L.F., about her relationship with a "Jamaican dude" who lived close to her and "forced her to have sex with him."[1] L.F. saw A.S. get picked up from school in a black car.

A.S. also told L.K., the school social worker, that she was in a sexual relationship with a much older man named Filbert. L.K. testified that A.S. told her that she met this man at a park, and he later grabbed her breast in his apartment after she went to use the bathroom. L.K. immediately reported the information to law enforcement.

Officer Tiffany Thompson spoke with A.S. approximately 24 hours after A.S. talked to L.K. A.S. told Officer Thompson that she was in a sexual relationship with "Filbert." She described where Filbert lived and worked, and she told Officer Thompson that he drove

---

[1] Onyoni is Jamaican.

a black Jaguar. Through her investigation, Officer Thompson confirmed that the descriptive information provided by A.S. identified Onyoni.

Respondent State of Minnesota charged Onyoni with third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(b) (2014), and a jury convicted him. This appeal follows.

## DECISION

Onyoni argues that the state failed to prove beyond a reasonable doubt that he sexually penetrated A.S. We cannot disturb a conviction if, "given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). And we "must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence." *Id.*

A person who sexually penetrates another person is guilty of third-degree criminal sexual conduct if "the actor is more than 24 months older than the complainant" and "the complainant is at least 13 but less than 16 years of age." Minn. Stat. § 609.344, subd. 1(b) (2014). Sexual penetration includes "sexual intercourse, cunnilingus, [or] fellatio," or "any intrusion however slight into the genital or anal openings." Minn. Stat. § 609.341, subd. 12 (2014). Onyoni does not challenge the sufficiency of the state's evidence with respect to his age or A.S.'s age.

There is ample evidence from which a jury could reasonably find Onyoni guilty. A.S. testified that she had sexual intercourse with Onyoni approximately two times per week. A.S. testified that, on one occasion, Onyoni's "tongue was touching [her] vagina"

4

and his "penis was in [her] vagina." She also testified that Onyoni's penis was in her vagina, and she "had his penis in [her] mouth" on a different day.

Onyoni contends that his conviction should be reversed because A.S.'s testimony was substantially inconsistent and uncorroborated. "Minor inconsistencies and conflicts in evidence do not necessarily render testimony false or provide the basis for reversal." *State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004). This "may be especially true when a crime victim is recounting a traumatic or stressful event." *State v. Bakken*, 604 N.W.2d 106, 111 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000). And it is well established that testimony from victims of criminal sexual conduct need not be corroborated. Minn. Stat. § 609.347, subd. 1 (2014); *see, e.g.*, *Johnson*, 679 N.W.2d at 387.

Here, Onyoni argues that A.S.'s inconsistent identification of his penis in the Facebook picture, her inconsistent testimony regarding whether Onyoni used force to have sex with her, and her inconsistent statements regarding other circumstances surrounding their sexual relationship are significant enough to require corroboration. We disagree.

Any inconsistencies in A.S.'s testimony are minor and do not provide a basis for reversal. A.S.'s inconsistent identification of Onyoni's penis in the Facebook message that he sent to her does not conflict with her testimony that they had sexual intercourse. And ultimately, any inconsistencies in her testimony "were for the jury to assess." *Johnson*, 679 N.W.2d at 387.

Because A.S.'s testimony provides a sufficient basis from which the jury could reasonably have found him guilty, we conclude that the evidence is sufficient to sustain

5

Onyoni's conviction. Even if her testimony was inconsistent, we may only reverse Onyoni's conviction if *additional* reasons to question A.S.'s credibility exist *and* the state presented no corroborating evidence. *See State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004).

Citing *Huss*, *Langteau*, and *Gluff*, Onyoni argues that corroboration is required here because there were significant reasons for the jury to doubt A.S.'s credibility, and because the state did not present corroborating evidence, his conviction should be reversed. *See State v. Huss*, 506 N.W.2d 290, 292-93 (Minn. 1993); *State v. Langteau*, 268 N.W.2d 76, 77 (Minn. 1978); *State v. Gluff*, 285 Minn. 148, 151, 172 N.W.2d 63, 65 (1969).

In *Huss*, testimony from a three-year-old alleged criminal-sexual-conduct victim "was contradictory as to whether any abuse occurred at all, and was inconsistent with [the victim's] prior statements and other verifiable facts." 506 N.W.2d at 292. The supreme court concluded that this testimony alone would not merit reversal absent the victim's exposure and "repeated use of a highly suggestive book on sexual abuse." *Id.* at 292-93. Unlike *Huss*, Onyoni fails to identify any additional reason, beyond his assertion of A.S.'s inconsistent or conflicting testimony, that justifies reversal of his conviction. And Onyoni's reliance on *Langteau* and *Gluff* is misguided because neither case involves a criminal-sexual-conduct conviction. *See Langteau*, 268 N.W.2d at 77; *Gluff*, 285 Minn. at 149, 172 N.W.2d at 64.

Onyoni also contends that A.S.'s testimony was not corroborated because his Facebook messages to her establish only that he engaged in "sexual fantasy talk." We disagree. The state presented Facebook messages exchanged between Onyoni and A.S. to

6

corroborate A.S.'s testimony. Onyoni said in one message, "Luckily you didn't give me any [sexually transmitted diseases]." In another Facebook conversation between Onyoni and A.S., he asked her if she had taken a morning-after pill:

> Onyoni: did u take the pill?
> A.S.: no im taking it tonight
> Onyoni: [What the f--k]
> Onyoni: thats f--kin late
> A.S.: [I've] had people over [and] no its not i have to take it by tomorrow at 2
> Onyoni: [OH MY GOD]
> Onyoni: U WERE SUPPOSED TO TAKE IT IMMEDIATELY

These are conversations that would reasonably take place *after* sexual intercourse and therefore corroborate A.S.'s testimony. The jury also heard testimony from two other corroborating witnesses: L.F. and L.K. L.F. testified that she saw a Jamaican man pick up A.S. from school and that A.S. told her she was having sex with him. L.K. testified that A.S. told her she had been having sex with a much older man named Filbert.

The evidence is sufficient to sustain Onyoni's conviction. Because testimony from a criminal-sexual-conduct victim need not be corroborated and inconsistent testimony does not provide a basis for reversing his conviction, we conclude that A.S.'s corroborated testimony provides a sufficient basis from which a jury could reasonably conclude that Onyoni is guilty of third-degree criminal sexual conduct.

**Affirmed.**

7