*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1217**

State of Minnesota,
Respondent,

vs.

Damarcus Deontay Holloway,
Appellant.

**Filed June 10, 2024**
**Affirmed**
**Frisch, Judge**

Blue Earth County District Court
File No. 07-CR-23-379

Keith Ellison, Attorney General, Lisa Lodin, Assistant Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Frisch, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant challenges the sufficiency of the evidence supporting his conviction for possession of a firearm by an ineligible person. Because the evidence at trial was sufficient to support the conviction, we affirm.

## FACTS

Appellant Demarcus Deontay Holloway challenges his conviction for possession of a firearm by an ineligible person. The facts, as found by the district court after a court trial, are as follows.

On January 30, 2023, O.P. contacted P.I. about obtaining "percs"—counterfeit oxycodone containing fentanyl. *See* Minn. Stat. § 152.02, subd. 3(c)(10) (2022) (establishing fentanyl as a schedule-II controlled substance). P.I. stated he would need help with transportation to and from Minneapolis to get pills. O.P. then contacted L.P. for help with transportation. L.P. drove his father's car (L.P.'s car) to pick up O.P., and they then drove together to meet P.I.

Holloway was present when O.P. and L.P. met up with P.I. in Mankato. Holloway got into the driver's seat of L.P.'s car, and L.P. sat in the passenger seat. While Holloway and L.P. were in the car, P.I. handed Holloway a black handgun with the imprint 9x19 on the side through the front passenger window. Holloway took the firearm and placed it somewhere that L.P. could not see.

Holloway and L.P. drove to Minneapolis together. O.P. and P.I. drove together in another car. When they arrived at a residence in Minneapolis, P.I. left with an "associate." At that time, P.I. possessed a firearm described as having a "silver top." In the meantime, Holloway drove himself, L.P., and O.P. around in L.P.'s car. When both they and P.I. returned to the residence, P.I. joined them in L.P.'s car. All four then drove back to Mankato in L.P.'s car, leaving the other car in Minneapolis.

On the drive back, the group stopped at a gas station. Just after 1:22 a.m. on January 31, someone, believed to be the associate, arrived to pick up the group. The group, with P.I. driving, headed back to Mankato in the associate's car, leaving L.P.'s car at the gas station. On the way, L.P., O.P., and the associate smoked "percs" in the associate's car.

P.I. dropped L.P. and O.P. off at their respective homes, handing them five pills each from the front seat. L.P. smoked the pills and overdosed later that day. Law enforcement began investigating. Holloway and P.I. became suspects in the investigation after L.P. identified Holloway in a photo lineup with 80% certainty.

Later that same day, a special agent surveilled an apartment associated with Holloway and/or P.I., as well as two cars—a sedan and an SUV—in the parking lot adjacent to the apartment. The special agent saw Holloway exit the apartment and enter the sedan, and a woman and a child exit the apartment and head to the SUV with jumper cables. P.I. exited the apartment with a camouflage backpack. P.I. put the backpack in the sedan, then helped the woman with the jumper cables on the SUV. P.I. then took the backpack from the sedan and placed it in the SUV.

Officers detained Holloway, P.I., and the woman and searched both cars and the apartment. In the apartment, officers found a box for an Italian firearm. In the backpack, officers found a black Glock handgun with 9x19 imprinted on the side, a loaded magazine for an Italian firearm, a silver Italian firearm, and two groups of pills. Holloway's DNA was not found on the firearms, ammunition, or magazine.

Respondent State of Minnesota charged Holloway with conspiracy to commit second-degree controlled-substance sale in violation of Minn. Stat. §§ 152.022, subd. 1(1),

3

.096, subd. 1 (2022); conspiracy to commit third-degree controlled-substance possession in violation of Minn. Stat. §§ 152.023, subd. 2(a)(1), .096, subd. 1 (2022); and possession of a firearm by an ineligible person in violation of Minn. Stat. § 609.165, subd. 1b(a) (2022). The state later added a charge of conspiracy to commit third-degree controlled-substance sale in violation of Minn. Stat. §§ 152.023, subd. 1(1), .096, subd. 1 (2022).

Holloway waived his right to a jury trial and the matter proceeded to a court trial. The district court found Holloway guilty of possession of a firearm by an ineligible person and conspiracy to commit third-degree controlled-substance sale, and not guilty of the other charges. The district court concluded that the state had proved beyond a reasonable doubt that Holloway actually possessed a firearm as an ineligible person because he "was handed (and he knowingly accepted) a firearm while having been previously convicted" of a crime of violence.

The district court entered convictions on both counts. The district court sentenced Holloway to 60 months in prison for possession of a firearm as an ineligible person and 45 months in prison for conspiracy to commit third-degree controlled-substance sale, to be served concurrently.

Holloway appeals his conviction of possession of a firearm by an ineligible person.

**DECISION**

The state bears the burden "of proving beyond a reasonable doubt every element of a charged offense in a criminal trial." *State v. Pakhnyuk*, 926 N.W.2d 914, 919 (Minn. 2019). Under Minn. Stat. § 609.165, subd. 1b(a), the state was required to prove

4

that Holloway (1) "has been convicted of a crime of violence, as defined in section 624.712, subdivision 5," and (2) "ship[ped], transport[ed], possesse[d], or receive[d] a firearm or ammunition." Holloway argues only that the state failed to prove that he possessed a firearm.

The state proved that Holloway possessed a firearm through direct evidence. "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024) (quotation omitted). Witness testimony "is direct evidence when it reflects a witness's personal observations and allows the jury to find the defendant guilty without having to draw any inferences." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016). At trial, L.P. testified that, while he was sitting in the passenger seat of his car, he personally observed P.I. hand Holloway, who was sitting in the driver's seat, a firearm through the passenger window. L.P.'s testimony is direct evidence that Holloway possessed a firearm.

When an element of an offense is supported by direct evidence, our review is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict that they did." *Id.* at 39-40 (quotation omitted). "We will not overturn the verdict if the jury, acting with regard for the presumption of innocence and the State's burden of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty." *Jones*, 4 N.W.3d at 502. "[W]e view the evidence in a light most favorable to the verdict and assume the fact-finder disbelieved any testimony conflicting with that verdict." *Id.* at 500 (quotation omitted). "We review criminal bench trials the same as jury trials

5

when determining whether the evidence is sufficient to sustain convictions." *State v. King*, 990 N.W.2d 406, 416 (Minn. 2023).

Holloway argues that L.P.'s testimony was not sufficient to establish that Holloway possessed a firearm because there were reasons to doubt his credibility—his identification of the firearm lacked certainty, his testimony was contradicted by O.P.'s testimony, and his controlled-substance use. Holloway also argues that the state did not produce corroborating evidence that Holloway possessed a firearm, specifically noting that Holloway's DNA and fingerprints were not found on the seized firearms.

Generally, "a conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). And, as a reviewing court, we must defer to the district court's credibility determinations. *King*, 990 N.W.2d at 420. After receiving evidence that could have undermined L.P.'s credibility—inconsistencies between his description of the firearm and what was seized, O.P.'s contradictory testimony, and L.P.'s controlled-substance use—the district court still found L.P.'s testimony credible, specifically noting that P.I. passed the firearm through the passenger window and in front of L.P. to give it to Holloway. We defer to this credibility finding.

Holloway asserts that "in cases where additional reasons to question the witness's credibility exist and the state presented no corroborating evidence, Minnesota's appellate courts will reverse convictions." In support of this assertion, Holloway cites three supreme court cases in which the court reversed convictions because the evidence was insufficient:

*State v. Huss*, 506 N.W.2d 290 (Minn. 1993), *State v. Langteau*, 268 N.W.2d 76 (Minn. 1978), and *State v. Gluff*, 172 N.W.2d 63 (Minn. 1969). All three cases are distinguishable.

In *Huss*, the defendant was convicted of second-degree criminal sexual conduct for the sexual abuse of his three-year-old daughter. 506 N.W.2d at 290. The court concluded, on the "unusual" facts of the case, that the state failed to meet its burden of proof when the only direct evidence of abuse was the child-victim's testimony, the testimony was "contradictory as to whether any abuse occurred at all, and was inconsistent with her prior statements and other verifiable facts," and the court was concerned that the child's exposure to a "highly suggestive book" about sexual abuse may have influenced their testimony. *Id.* at 292-93.

In *Langteau*, the defendant was convicted of aggravated robbery. 268 N.W.2d at 77. The supreme court concluded that "[u]nder all the circumstances" a new trial was required "in the interests of justice." *Id.* The court pointed to five circumstances in its decision: (1) the lack of explanation for why the victim was at a hospital until nearly midnight (shortly before the incident) or why the defendant, who was "well-acquainted" with the victim, would have committed the crime; (2) the defendant's categorical denial of any involvement in the crime; (3) the lack of other evidence linking the defendant to the crime; (4) the lack of support in the record for the state's theory of the case; and (5) the jury deliberations. *Id.*

In *Gluff*, the defendant was also convicted of aggravated robbery. 172 N.W.2d at 64. The supreme court concluded that the conviction should be reversed in the "interest of justice," reasoning that (1) the victim's opportunity to observe the offender was limited,

(2) her first description of the offenders was significantly different from the defendant's appearance, (3) she expressed doubt in her recounting of events at trial, and there was no corroboration of the identification, (4) her lineup identification lacked probative value because there were only two other people in the lineup and it was completed minutes after the victim's photo identification of the defendant, and (5) the jury had reason to believe that the defendant had a prior criminal history.[1]  *Id.* at 64-66.

L.P.'s testimony was internally consistent, corroborated in part by other facts, and the basis of his knowledge was his personal observation of a firearm being passed in front of him.  While there were reasons to doubt L.P.'s credibility, and other evidence in the record could lead a person to doubt whether Holloway possessed a firearm, the circumstances here do not amount to those for which reversal of the conviction is appropriate under our standard of review.  *See Jones*, 4 N.W.3d at 500, 502 (stating that we view the evidence in the light most favorable to the verdict and will not overturn the verdict if the fact-finder reasonably concluded that the defendant was guilty).

---

[1]  Holloway also compares his case to *State v. Brown*, No. A08-1674, 2009 WL 2226044 (Minn. App. July 28, 2009), *rev. denied* (Minn. Sept. 29, 2009), which is persuasive authority.  Minn. R. Civ. App. P. 136.01, subd. 1(c).  In *Brown*, we affirmed the defendant's conviction for possession of a firearm by an ineligible person.  2009 WL 2226044, at *1-2. There, a witness testified that they were positive that the defendant threatened them with a shotgun, even though other witnesses, both children, who corroborated the testimony on direct examination expressed doubt on cross-examination, and the officers never found a shotgun.  *Id.*  We reasoned that weighing the differing testimony was a jury function, and that the defendant's theory of the case was inconsistent with other evidence and the verdict. *Id.* at *2.   This case does not support Holloway's assertion that the district court's credibility finding regarding L.P.'s testimony should be overturned on appeal.

In sum, the evidence was sufficient for a fact-finder to reasonably conclude that Holloway possessed a firearm. L.P. testified that he saw P.I. give Holloway a firearm, and the district court found L.P.'s testimony credible. We defer to that credibility finding, and we are not persuaded that reversal is appropriate given the circumstances of this case relative to others in which the supreme court reversed due to witness-credibility concerns.

**Affirmed.**